The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Russell C. MORAN, Defendant–Appellant.

No. 97CA1800.

Colorado Court of Appeals,
Div. V.

March 4, 1999.

Certiorari Denied Sept. 13, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Shawn D. Mitchell, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Russell C. Moran, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of a schedule II controlled substance, possession of under one ounce of marijuana, and failure to provide evidence of insurance. We affirm.

Defendant's arrest resulted from a police stop for a traffic violation. According to the testimony of the arresting officer at trial, defendant was unable to provide proof of insurance.

Upon the officer's request, defendant stepped out of the vehicle. As he opened the car door, the officer saw him push something on the dashboard that appeared to be a marijuana cigarette. When asked what it was, defendant admitted it was marijuana. At that point, the officer arrested defendant and placed him in the back seat of the patrol car.

The officer began a search of defendant's vehicle. Upon finding a baggie of marijuana, the officer returned to the patrol car and asked defendant if he knew what it was. Defendant responded that he "didn't know about that."

The officer continued his search of defendant's vehicle and found a cloth pouch. Inside were two more baggies of marijuana, a pipe, sunglasses, and two smaller baggies containing a "brown and tan" powdery substance, which proved to be methamphet-amine. Once again, the officer returned to his patrol car and asked what defendant knew about these items. Defendant responded that "he didn't know where that came from."

## I.

Defendant contends the trial court erred when it allowed the prosecutor to inquire during his cross-examination, and to comment in closing arguments, about supposed omissions from the statements he made to police immediately after his arrest. He argues that, even if not violative of his rights under the federal constitution, we should conclude that the references violated his rights under the Colorado constitution. We are not persuaded.

## A.

Initially, we note that the People have not raised, and thus we do not address, the failure of defense counsel before trial to file a motion to suppress evidence of defendant's statements to the arresting officer. *See* Crim. P. 41(g). Likewise, the People have not raised, and we do not address, the failure of defense counsel at trial to object to the earlier testimony of the arresting officer concerning defendant's statements or, on appeal, to challenge that testimony.

At trial, in his own direct examination, defendant acknowledged that on the day in question he had been driving his vehicle without insurance. He further admitted telling the arresting officer that it was a marijuana "roach" on his dashboard. When the officer had asked if there was anything he wanted to say about what was in the car, defendant had responded, "I have no idea what you could find or if there's anything else in there."

Defendant's account of the events following his arrest was generally consistent with the officer's testimony, with one exception. He testified that when the officer returned to the vehicle the second time and asked about the cloth pouch and its contents, defendant "shrugged."

Defendant then explained that his house was like a "halfway house," with four or five

people staying there at any one time. It was common for these people to use his vehicle. He insisted that he had no idea any marijuana or methamphetamine was in the car. He concluded his testimony by stating that he did not know who was responsible, but he did not put the drugs there.

On cross-examination, defendant repeated much of his testimony, including his statements to the arresting officer. He admitted that the cloth pouch and the sunglasses were his. He was asked, without objection, whether he had said anything to the officer about other people driving his car. He admitted that he had not. He was also asked about, and repeated, his testimony that he had merely shrugged when the officer inquired about the items found in the cloth pouch.

During closing arguments, the prosecutor argued that defendant's failure to assert at the time of his arrest that the drugs belonged to another person implied that defendant's claim was a fabrication. Defense counsel again made no objection.

### B.

Because defense counsel at trial did not object to any of the prosecutor's cross-examination or the closing argument, we review both only for plain error. *Walker v. People,* 932 P.2d 303 (Colo.1997). Nevertheless, to the extent defendant asserts a violation of either the federal or the state constitution, we will assume without deciding that any such violation, unless harmless beyond a reasonable doubt, would require reversal. *See Merritt v. People,* 842 P.2d 162 (Colo.1992).

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that when a defendant takes the stand, the use for impeachment purposes of silence at the time of arrest and after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment. The Court reasoned that implicit in the warnings is an assurance that silence will carry no penalty.

However, the Supreme Court later determined that no due process violation results when a defendant is cross-examined about post-arrest silence, so long as the defendant

has not received any *Miranda* warnings before becoming silent. Its reasoning was that no government action induced the silence. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

The Supreme Court has further concluded that, when a defendant takes the stand, *Doyle* does not apply to cross-examination for impeachment purposes that merely involves inquiries into prior statements that are inconsistent with the defendant's testimony at trial. This includes statements made to a police officer after arrest, and even after receiving *Miranda* warnings. *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); *see also Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *People v. Quintana,* 665 P.2d 605 (fn.7)(1983) ("The failure to make any statement [at the time of arrest] should be distinguished from the situation where the accused makes a statement but omits significant details which are later included in a subsequent statement. The omission of a significant detail is in the nature of a prior inconsistent statement.").

■ Defendant acknowledges that the prosecutor's references during cross-examination to omissions from his post-arrest but pre-*Miranda* statements may not have violated his rights under the federal constitution. Defendant nevertheless asks us to adopt a broad state rule that prohibits any such reference. He points to the observation in *Fletcher* that states remain free to fashion their own rules of evidence regarding the extent to which post-arrest silence may be deemed to impeach a criminal defendant's own testimony. He also notes the concern expressed by our supreme court in *People v. Quintana, supra,* with the inherent ambiguity of post-arrest silence.

In the alternative, defendant argues that the supposed omissions from his post-arrest statements were not so significant as to render his responses to the arresting officer inconsistent with his trial testimony. He urges that, at the least, we should adopt a rule prohibiting the use of such insignificant omissions for purposes of impeachment.

Although not argued by the People on appeal, we conclude that it is unnecessary to adopt any rule applicable to the use of omissions from post-arrest statements for the general purpose of impeachment. Here, on direct examination, defendant did not merely provide an exculpatory version of the events that transpired, without any reference to his interactions with the arresting officer. Rather, he specifically testified about his statements to the officer.

In *Brown v. United States,* 356 U.S. 148, 154–55, 78 S.Ct. 622, 626, 2 L.Ed.2d 589, 596–97 (1958), the United States Supreme Court addressed the import of discussing a particular subject on direct examination:

> If [a defendant] takes the stand and testifies in his own defense his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination. '(H)e has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts.'

The extent of a defendant's waiver of the Fifth Amendment privilege resulting from testifying about particular subjects on direct examination was later summarized by the Ninth Circuit in *United States v. Black,* 767 F.2d 1334, 1341 (9th Cir.1985):

> A defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.... The scope of the defendant's waiver is coextensive with the scope of relevant cross-examination.... Fixing the extent of cross-examination, in turn, is left to the discretion of the trial judge.... [T]he inquiry is whether 'the government's questions are "reasonably related" to the subjects covered by the defendant's testimony.'

Even more recently, in *People v. Sallis,* 857 P.2d 572, 575 (Colo.App.1993), a division of this court succinctly stated the same conclusion:

> [T]he prosecutor is not limited to a mere categorical review of the evidence testified to on direct examination. Rather, the prosecutor must be permitted to examine the defendant in detail as to matters generally referred to during direct examination.

*See also* C.R.C.P. 611(b)(cross-examination limited to the "subject matter" of the direct examination); *see also People v. Miller,* 890 P.2d 84 (Colo.1995)(permitting a witness to be cross-examined about a subject raised on direct examination represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated upon or placed in context, may create an incorrect or misleading impression); *People v. Melillo,* 976 P.2d 353 (Colo.App.1998)(if one party testifies on direct examination with respect to a particular subject, the adverse party is entitled to present evidence upon that same subject, even though such evidence might otherwise be inadmissible); *cf. People v. Hardiway,* 874 P.2d 425 (Colo.App.1993)(defendant did not testify on direct in regard to conversation with arresting officer).

We therefore conclude that, because defendant's statements to the arresting officer were a subject of his direct examination, he could be subjected to cross-examination about those statements without violating any constitutional rights, federal or state. We further conclude that the prosecutor's questions about omissions from the statements were "reasonably related to the subjects covered by the defendant's testimony." Hence, the trial court did not err in permitting the prosecutor to question defendant about those omissions, however "significant," in the same manner permitted for any other witness.

■ Finally, because the evidence concerning the omissions from defendant's statements at the time of his arrest was properly admitted, it was likewise not error for the prosecution to refer to that evidence in closing arguments. Contrary to defendant's characterization, the prosecutor was not improperly commenting on defendant's post-arrest "silence." Rather, the prosecutor was properly commenting on reasonable inferences that could be drawn about defendant's credibility from his testimony and his statements to the arresting officer. *See People v.*

*Brooks,* 950 P.2d 649 (Colo.App.1997)(counsel is entitled to argue all reasonable inferences from the facts in evidence and may comment on how well and in what manner a witness measures up to the tests of credibility set forth in the instructions).

## II.

Defendant next asserts the trial court erred when it failed to instruct the jury that it must determine whether the methamphetamine he possessed in fact had a stimulant effect on the central nervous system and, if so, whether he possessed a sufficient quantity to produce such an effect. In a related argument, he asserts that, because the prosecutor presented no such evidence, the evidence was insufficient to support his conviction. We again disagree.

Section 18–18–204(2), C.R.S.1998, states that the following controlled substances are listed in schedule II:

(c) Any material, compound, mixture, or preparation containing any quantity of the following substances, their salts, or isomers, salts of isomers having a stimulant effect on the central nervous system:

. . . .

(II) Methamphetamine. . . .

Defendant's argument is that the statute must be read to require the prosecution to prove in every case that a listed substance, such as methamphetamine, has a stimulant effect on the central nervous system, and that the quantity possessed is sufficient to have such an effect. Otherwise, the phrase, "having a stimulant effect on the central nervous system," is superfluous.

▬ In contrast, the People argue that the reference to having a stimulant effect on the central nervous system is descriptive of the listed substances, including methamphetamine. The statute does not require proof that the substance, or particular quantity of the substance, is sufficient to have such an effect. We agree with the People.

Our statutory scheme is similar to that enacted by several states and the federal government. With a single exception, defendant's argument has been uniformly rejected. *See e.g. United States v. Durham,* 941 F.2d 886 (9th Cir.1991); *United States v. Picklesimer,* 585 F.2d 1199 (3d Cir.1978); *United States v. White,* 560 F.2d 787 (7th Cir.1977); *United States v. Nickles,* 509 F.2d 810 (5th Cir.1975); *United States v. Levin,* 443 F.2d 1101 (8th Cir.1971); *State v. Light,* 175 Ariz. 62, 852 P.2d 1246 (App.1993); *People v. Sherman,* 57 Cal.App.4th 102, 66 Cal.Rptr.2d 764 (1997); *State v. Collinsworth,* 96 Idaho 910, 539 P.2d 263 (1975); *State v. Hernandez,* 104 N.M. 97, 717 P.2d 73 (App.1986); *Doyle v. State,* 511 P.2d 1133 (Okla.Crim.App.1973); *State v. Henry,* 116 Or.App. 138, 840 P.2d 1335 (1992); but see *Commonwealth. v. Driscoll,* 485 Pa. 99, 401 A.2d 312 (1979).

The Third Circuit in *United States v. Picklesimer, supra,* explained that the purpose of such statutes is to control the illegal manufacture and distribution of substances that, while they may have legitimate medical purposes, are subject to abuse and have a detrimental effect. Drugs are divided into schedules by common characteristics, which are described at the start of each list. A description, such as "having a stimulant effect on the central nervous system," provides guidance as to the category into which any new substance should be placed. It does not create a separate element of proof.

In our view, the same reasoning applies to our statutory scheme. *See* § 18–18–204(1), C.R.S.1998 (specifying when a substance shall be added to those listed in the various categories). We therefore find no error in the instructions given or in the trial court's conclusion that the evidence was sufficient to support defendant's conviction.

## III.

Defendant's next contention is that the information charging him with driving without proof of insurance was deficient in two respects. He argues that, as a result of these deficiencies, the trial court lacked jurisdiction and his conviction must therefore be vacated. We disagree.

Here, the information alleged: "Russell Moran, the driver and operator of a motor vehicle upon a highway, did unlawfully drive

and operate said motor vehicle without proof of insurance."

The required contents of an information are set forth in § 16–5–202, C.R.S.1998, and Crim. P. 7(b)(2). Under the statute and rule, an information is considered sufficient if it can be understood that the person who signed it was authorized to prosecute the offense; that the defendant is named or described; that the offense was committed within or is triable in the jurisdiction of the court; and that the offense charged is described in enough detail to enable the court to pronounce judgment upon a conviction. *People v. Joseph,* 920 P.2d 850 (Colo.App. 1995). The overriding constitutional concern is whether the defendant has been sufficiently informed of the charges to prepare an effective defense and to plead the judgment in bar of future prosecutions for the same offense. *See People v. Joseph, supra; see also People v. Roberts,* 668 P.2d 977 (Colo. App.1983).

■ Defects in the form of an information that do not impact jurisdiction or substantially prejudice a defendant's rights will not render an information void. Hence, in the absence of a timely objection, any such defects are waived. *People v. Hunter,* 666 P.2d 570 (Colo.1983); *People v. Joseph, supra.*

### A.

Defendant first asserts that, because the information referred only to "highway," not "public highway," it failed to include an essential element of the offense. We disagree.

■ The statutory basis for this charge makes it illegal to knowingly operate a "vehicle on the public highways of this state" without motor vehicle insurance. Sections 10–4–705(1), 10–4–705(2), and 42–4–1409(2), C.R.S.1998.

While the information omitted the word "public," defendant does not suggest that any "highway" in Colorado is other than a "public highway." More importantly, an information need not follow the exact wording of the statute. *Loggins v. People,* 178 Colo. 439, 498 P.2d 1146 (1972). Indeed, unlike some states, Colorado does not require that an information expressly state every element of

the offense charged. *People v. MacFarland,* 189 Colo. 363, 540 P.2d 1073 (1975); *see generally* S. Briggs, *Amending Indictments in Colorado,* 6 Colo. Law. 765, 773 (May 1977)("[I]t is now settled that in Colorado state criminal proceedings it is not necessary to allege in the charging document every element of the offense that must be proved to make the act a crime.").

In addition, the record is devoid of any suggestion of prejudice. And finally, defendant did not raise at trial the objection now raised on appeal.

We therefore conclude that the omission of the word "public" from the information did not violate § 16–5–202 or Crim. P. 7(b)(2). Nor did it violate any of defendant's constitutional rights.

### B.

■ Defendant separately asserts that operating a motor vehicle without "proof of insurance," as distinct from operating a motor vehicle "without a complying insurance policy," is not a cognizable crime in Colorado and that the information therefore fails to state a public offense. We again disagree.

Section 42–4–1409(2), C.R.S.1998, provides that no person shall operate a motor vehicle on the public highways of this state without a complying policy of insurance or certificate of self-insurance in full force and effect. However, § 42–4–1409(3), C.R.S.1998, separately provides that, "when requested to do so ... no operator of a motor vehicle shall fail to present to the requesting officer immediate evidence of a complying [insurance] policy...."

Under § 42–4–1409(4), C.R.S.1998, the violation of either provision is a class 1 misdemeanor. The information therefore properly stated a public offense.

### IV.

Defendant's final contention is that the cumulative effect of several instances of alleged prosecutorial misconduct violated his right to a fair trial by an impartial jury. We are not persuaded.

Defendant challenges the prosecutor's references, in cross-examination and closing argument, to defendant's receipt of disability checks. He also challenges the prosecutor's argument to the jury that its "job was to convict [defendant] of everything he's charged with," as well as the prosecutor's comparison of defendant's theory of defense, blaming someone else, to the defense used in a recent famous murder trial.

■ Because defendant did not object at trial to any of the comments he now challenges, his claims must be reviewed under the plain error standard. Under that standard, reversal is not warranted unless the incidents so affected the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment. *Harris v. People*, 888 P.2d 259 (Colo.1995); *People v. Raehal*, 971 P.2d 256 (Colo.App.1998).

■ Contentions of improper closing argument must be evaluated in the context of the argument as a whole and in light of the evidence. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981); *People v. Marquantte*, 923 P.2d 180 (Colo.App.1995).

■ Initially, we note that defendant raised the subject of his disability checks in his direct examination. Hence, as previously discussed, it was a proper subject of cross-examination. The statements in closing argument were brief and unrelated to one another. Even assuming, without deciding, that any or all of these comments constituted misconduct, when viewed in context their cumulative effect did not so affect the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment. *See People v. Raehal, supra; People v. Eckert*, 919 P.2d 962 (Colo.App.1996).

Judgment affirmed.

Judge DAVIDSON and Judge VOGT concur.