STATE of Minnesota, Plaintiff,

v.

Mohamed Galony ALI,
et al., Defendants,

Abdi Mohamed Askar, Mohamud Muse
Jama, Abshir Mohamed Ahmed,
Defendants.

No. C2–00–70.

Court of Appeals of Minnesota.

July 11, 2000.

Review Denied Sept. 13, 2000.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN (for plaintiff).

William E. McGee, Chief Hennepin County Public Defender, Renee Bergeron, Rene Clemenson, Assistant Public Defenders, Minneapolis, MN (for defendants Mohamed Galony Ali, Arie Musse Jama, and Ahmed Abdi Mursal).

Stephen Grigsby, Minneapolis, MN (for defendant Abdi Mohamed Askar).

Chris Goodman, Minneapolis, MN (for defendant Abshir Mohamed Ahmed).

Ronald Bradley, Minneapolis, MN (for defendant Mohamud Muse Jama).

Considered and decided by KLAPHAKE, Presiding Judge, KALITOWSKI, Judge, and PORITSKY,* Judge.

## OPINION

KALITOWSKI, Judge

The district court certified a question to this court asking whether, to support a controlled substance charge for the possession of cathinone under Minn.Stat. § 152.02, subd. 2(6) (1998), the state must prove that the cathinone is present in a quantity "having a stimulant effect."

## FACTS

This case involves felony charges against six defendants: Abshir Mohamed Ahmed, Mohamed Galony Ali, Abdi Mohamed Askar, Arie Musse Jama, Mohamud Muse Jama, and Ahmed Abdi Mursal. Each defendant was charged with one count of fifth-degree possession of khat, a plant containing the controlled substance cathinone.

Khat is a plant native to East Africa that contains cathine and cathinone, both controlled substances under Minnesota law. Cathinone is the stimulant at issue in this case. Khat is consumed by chewing and produces a stimulant reaction including hyperalertness, hyperactivity, and elevated respiration and heart rate. The evidence in the record indicates that because the cathinone in khat deteriorates rapidly, by the time the khat reaches Minnesota from East Africa its potency has diminished.

The khat seized from the defendants was tested for the presence of cathinone. The samples all contained cathinone, but the testing neither quantified the amount of cathinone present nor determined whether the cathinone present was in the form of the negative or positive isomer. Evidence was presented that the negative isomer of cathinone is the more potent stimulant.

Two of the defendants demanded a Frye hearing to determine the admissibility of the state's tests used to determine the presence of cathinone in the khat. All of the defendants made a motion to dismiss for lack of probable cause, arguing that in order to support a charge for possession of cathinone: (1) the state must prove that the khat contained an amount of cathinone sufficient to produce a stimulant effect; and (2) the state's testing must distinguish between the positive and negative isomers of cathinone. The district court conducted a hearing and determined that the testing procedures were widely used and acceptable in the scientific and legal community. The district court denied the motion to dismiss based on its conclusions that the statute prohibits any quantity of cathinone regardless of whether it is in an amount sufficient to produce a stimulant effect and regardless of which isomer is present. The district court certified the question of whether the state must prove through testing that the amount of cathinone present has a stimulant effect.

## ISSUE

Must the state prove that the amount of cathinone possessed by a defendant is in a quantity "having a stimulant effect" in order to support a charge for possession of cathinone, a controlled substance under Minn.Stat. § 152.02, subd. 2(6) (1998)?

## ANALYSIS

■ The interpretation of a statute is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). When the application of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

statutory language to a situation is clear and free from all ambiguity, the plain meaning of the language controls. Minn. Stat. § 645.16 (1998). The object of interpretation and construction of laws is to ascertain and effectuate the legislature's intention. *Id.* "Penal statutes are to be strictly construed with all reasonable doubts concerning legislative intent to be resolved in favor of the defendant." *State v. Wagner,* 555 N.W.2d 752, 754 (Minn. App.1996). But the court is not required to give a statute the narrowest possible interpretation. *Id.*

■ A person commits a controlled substance crime in the fifth degree if

the person unlawfully possesses one or more mixtures containing a controlled substance classified in schedule I, II, III, or IV, except a small amount of marijuana.

Minn.Stat. § 152.025, subd. 2(1) (1998). Cathinone is listed as a schedule I controlled substance:

Unless specifically excepted or unless listed in another schedule, any material compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

Cathinone;

Methcathinone.

Minn.Stat. § 152.02, subd. 2(6) (1998). The defendants argue that this statute requires the state to prove that the quantity of cathinone had a stimulant effect on the central nervous system in order to support a charge for possession of cathinone. Under this interpretation, the phrase "having a stimulant effect" modifies "quantity."

The state argues that the phrase "having a stimulant effect" modifies "substances" only and should not be treated as an element of the offense.

To support their interpretation, defendants raise several issues regarding the propriety and fairness of prosecuting persons for chewing khat leaves. But even if we assume that defendants' arguments have merit, the certified question before us here is one of statutory interpretation: whether the state must prove under Minn. Stat. § 152.02, subd. 2(6), that the cathinone at issue was present in a quantity "having a stimulant effect." Therefore, we consider only this narrow issue on appeal.

The schedules of controlled substances classify a number of different substances using phrases like the one at issue here. *See* Minn.Stat. § 152.02, subds. 2(5) (1998) ("having depressant effect"), 3(3) (1998) ("having a stimulant effect"), 3(4) (1998) ("having a depressant effect"), 4(2) (Supp. 1999) ("having a potential for abuse associated with a depressant effect"), 4(3) (Supp. 1999) ("having a potential for abuse associated with a stimulant effect"). Minnesota's statutes are similar to controlled substances laws in other jurisdictions because nearly every state, including Minnesota, has adopted a version of the Uniform Controlled Substances Act (UCSA). UCSA (1994), Table of Jurisdictions, 9 U.L.A. 1–2 (1997). The UCSA was drafted to complement the federal law and achieve uniformity in the laws of the several states. UCSA, Prefatory Note, 9 U.L.A. 5.

Although Minnesota courts have not interpreted any of the phrases in the schedules of controlled substances, most jurisdictions faced with a similar interpretation question have concluded that the government is not required to prove that the quantity of the drug in question had a stimulant or depressant effect. *See United States v. Durham,* 941 F.2d 886, 891 (9th Cir.1991); *United States v. Picklesim-*

*er*, 585 F.2d 1199, 1203 (3d Cir.1978); *United States v. White*, 560 F.2d 787, 790 (7th Cir.1977); *United States v. Nickles*, 509 F.2d 810, 811 (5th Cir.1975); *State v. Light*, 175 Ariz. 62, 852 P.2d 1246, 1248 (Ct.App.1993); *People v. Moran*, 983 P.2d 143, 147 (Colo.Ct.App.1999); *State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263, 267–68 (1975); *People v. Bolden*, 62 Ill.App.3d 1009, 20 Ill.Dec. 79, 379 N.E.2d 912, 915 (1978); *People v. Busby*, 56 Mich.App. 389, 224 N.W.2d 322, 324–25 (1974); *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477, 480 (1976); *State v. Hernandez*, 104 N.M. 97, 717 P.2d 73, 77 (Ct.App.1986); *State v. Allesi*, 216 N.W.2d 805, 810 (N.D.1974); *Doyle v. State*, 511 P.2d 1133, 1136 (Okla. Crim.App.1973); *State v. Henry*, 116 Or. App. 138, 840 P.2d 1335, 1336 (1992); *State v. Johnson*, 254 N.W.2d 114, 117 (S.D. 1977); *Sheffield v. State*, 623 S.W.2d 403, 408 (Tex.Crim.App.1981).

Several of these jurisdictions have determined that phrases like the one at issue in Minn.Stat. § 152.02, subd. 2(6), were intended as legislative guidance for the classification and categorization of new controlled substances and were not an element required to be proven by the state. *See, e.g., Picklesimer*, 585 F.2d at 1203; *Moran*, 983 P.2d at 147; *Collinsworth*, 539 P.2d at 267; *Sheffield*, 623 S.W.2d at 408. Similarly, courts have determined that phrases like the one used in Minn. Stat. § 152.02, subd. 2(6), represent a legislative determination about the effects of a substance and that further proof is therefore not required. *See, e.g., White*, 560 F.2d at 789–90; *Nickles*, 509 F.2d at 811; *Light*, 852 P.2d at 1247. Additionally, several courts have found that the placement of the phrase near the word "substance" rather than the word "quantity" supports the construction urged by the state here. *See Hernandez*, 717 P.2d at 76 (adopting this view and citing other jurisdictions that have adopted similar rationale).

We find the reasoning in these cases to be persuasive. Minnesota's statute is phrased similarly to those in other jurisdictions and this court must interpret uniform laws to effect the general purpose of making the laws of the states uniform. Minn.Stat. § 645.22 (1998). Thus we conclude that the phrase "having a stimulant effect" provides legislative guidance for classifying and categorizing additional substances. In addition, there are practical reasons supporting this interpretation. As with other substances, the effect of a given amount of cathinone depends on the amount of cathinone already consumed, other substances consumed by a person, the person's sensitivity to cathinone, and the person's size. Thus, the interpretation advocated by defendants would necessarily result in inconsistent and irregular prosecutions.

Notwithstanding the evidence presented by defendants regarding the unique qualities of khat, nothing in the statute suggests that the legislature intended greater proof requirements for cathinone than for other controlled substances. Other subparts of the statute at issue use a descriptive term for the substances classified therein. *See, e.g.,* Minn.Stat. § 152.02, subds. 2(2) (1998) (referring to "opium derivatives"); 2(3) (1998) (referring to "hallucinogenic substances"); 3(2) (1998) (referring to "opiates"); 4(5) (Supp. 1999) (referring to "narcotic drugs").

Only one jurisdiction has accepted defendants' argument that the phrase "having a stimulant effect" adds an element that the state must prove. *See Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682, 684 (1975) (holding that the phrase "having a potential for abuse associated with a depressant effect" modified "quantity"); *see also Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312, 316 (1979) (applying *Teada* in interpreting phrase "having a potential for abuse associated with a stimulant effect"). In *Teada*,

the court concluded that the legislature intended to impose greater proof requirements for the state in prosecutions of less dangerous substances and that this interpretation prevented the phrase from being mere surplusage. 344 A.2d at 684. But this reasoning has been uniformly rejected by courts in other jurisdictions. *Moran,* 983 P.2d at 147 (noting otherwise universal rejection of interpretation adopted in *Teada*). Thus, the principle of construing uniform laws similar to other jurisdictions supports our interpretation.

Defendants also argue that Minnesota courts have previously been inclined to limit controlled substance provisions where only a trace amount of a substance was found, citing *State v. Morgan,* 287 Minn. 406, 178 N.W.2d 697 (1970); *State v. Resnick,* 287 Minn. 168, 177 N.W.2d 418 (1970); and *State v. Lewis,* 394 N.W.2d 212 (Minn.App.1986), *review denied* (Minn. Dec. 12, 1986). But none of these cases is controlling here. The holdings in *Resnick* and *Morgan,* which required a usable quantity of marijuana for a conviction, were subsequently rejected by the Minnesota Supreme Court. *State v. Siirila,* 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971) (holding that *Resnick* and *Morgan* were "no longer tenable or controlling" insofar as they were based on a lack of possession of a usable quantity of marijuana). And the court in *Lewis* addressed the issue of whether presence of a controlled substance in a urine sample satisfied the meaning of the term "possession," which did not depend on the amount of the substance present in the sample. 394 N.W.2d at 216–17.

We conclude that the district court properly denied defendants' motions to dismiss because the statute prohibits the possession of cathinone regardless of whether the amount present is sufficient to produce a stimulant effect.

### DECISION

We answer the certified question in the negative. The state is not required to prove that cathinone is present in a quantity "having a stimulant effect" in order to support a controlled substance charge for the possession or sale of cathinone, a controlled substance under Minn.Stat. § 152.02, subd. 2(6) (1998).

**Certified question answered in the negative.**