The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

William J. FRANTZ, Defendant–Appellant.

No. 02CA0463.

Colorado Court of Appeals, Div. II.

July 29, 2004.

As Modified on Denial of Rehearing Jan. 13, 2005.

Certiorari Denied June 27, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2003.

Ken Salazar, Attorney General, John T. Bryan, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, William J. Frantz, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a schedule II controlled substance and possession with intent to manufacture a schedule II controlled substance. We affirm.

In 2000, defendant's wife was arrested for shoplifting four packages of cold medicine. She told police that she and defendant extracted pseudoephedrine from cold medicine tablets by dissolving them in water, a preliminary stage in manufacturing methamphetamine, and that they intended to and had talked about exchanging the extraction with another person for methamphetamine. She consented to a search of their residence, showed police five discarded packages of cold tablets, and stated that the contents of the packages were placed in water in a jar identified as belonging to defendant. The police seized the jar, and the solution in it was later found to contain pseudoephedrine.

Before trial, defendant filed a motion asking the court to declare unconstitutional the relevant statutory definition of controlled

substance analog. The court denied the motion.

Defendant also moved to dismiss the charges, contending pseudoephedrine is not a schedule II controlled substance, immediate precursor, or controlled substance analog. The court concluded the issue was a factual one that should be raised later in a motion for judgment of acquittal. At the close of the prosecution's evidence at trial, defendant renewed his motion making the same argument and the court denied his motion.

## I.

■ Defendant first contends the trial court erred in denying his motion to declare unconstitutional the definition of controlled substance analog contained in § 18–18–102(6), C.R.S.2003. According to defendant, this definition is unconstitutionally vague on its face and as applied to him through §§ 18–18–405 and 18–18–204(2)(g), C.R.S.2003. We disagree.

Statutory interpretation is a question of law that we review de novo. *See Hendricks v. People,* 10 P.3d 1231 (Colo.2000); *People v. Pierrie,* 30 P.3d 816 (Colo.App.2001). We interpret statutory words and phrases according to their commonly accepted meanings. *People v. Baer,* 973 P.2d 1225 (Colo. 1999); *People v. Nix,* 42 P.3d 41 (Colo.App. 2001).

A statute is presumed to be constitutional, and the burden falls upon the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *See* § 2–4–201(1)(a), C.R.S.2003; *People v. Alexander,* 663 P.2d 1024 (Colo.1983); *People v. Nix, supra.*

■ Statutes offend due process if they fail to give fair notice of the conduct prohibited and do not contain adequate standards to prevent arbitrary and discriminatory enforcement. *See People v. Baer, supra.* However, due process does not require mathematical exactitude in legislative draftsmanship. The inquiry in a void for vagueness challenge is whether the law in question either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its

meaning and differ as to its application. *People v. Alexander, supra; People v. Nix, supra.*

Where, as here, a statute does not burden protected speech, a court should sustain a facial challenge only where the enactment is impermissibly vague in all its applications. If the statute survives a facial challenge, a litigant may succeed on a vagueness claim only by demonstrating the statute is impermissibly vague as applied. *People v. Baer, supra; People v. Nix, supra.*

Colorado's Uniform Controlled Substances Act, § 18–18–101, et seq., C.R.S.2003 (the Act), was intended to control the illegal manufacture and distribution of substances that may have legitimate medical purposes, but are subject to abuse and have a detrimental effect. Drugs are divided into schedules based on their common characteristics. *People v. Moran,* 983 P.2d 143 (Colo.App.1999).

As relevant here, a controlled substance analog under the Act (1) is a substance the chemical structure of which is *substantially similar* to the chemical structure of a controlled substance in schedule II; and (2) has a stimulant ... effect on the central nervous system *substantially similar* to the stimulant ... effect on the central nervous system of a controlled substance included in schedule ... II. Section 18–18–102(6)(a)(I), C.R.S.2003 (emphases added). The definition excludes any substance for which there is an approved drug application, so long as such substance is in its intended and unconverted form. Section 18–18–102(6)(b)(II), C.R.S.2003.

A schedule II controlled substance analog is treated as a schedule II controlled substance. Section 18–18–204(2)(g), C.R.S.2003. It is unlawful for any person knowingly to possess or to possess with intent to manufacture a controlled substance. Section 18–18–405(1)(a), C.R.S.2003.

The Act is similar to statutory schemes enacted by several other states and by Congress. Although the federal controlled substances statute uses the term controlled substance analogue, the federal definition in large part is nearly identical to that contained in our statute. *See* 21 U.S.C. § 802(32) (defining controlled substance ana-

logue); 21 U.S.C. § 813 (controlled substance analogue shall be treated as a controlled substance); *see also People v. Moran, supra,* 983 P.2d at 147.

Defendant acknowledges that similar language in the federal analogue statute survived a vagueness challenge in *United States v. Granberry,* 916 F.2d 1008 (5th Cir.1990). There, the court concluded that the definition of controlled substance analogue in 21 U.S.C. § 802(32) and as used in 21 U.S.C. § 813 was not unconstitutionally vague, that it was clear and specifically defined in terms readily comprehensible to the ordinary reader, and that it provided adequate notice of the prohibited conduct. The *Granberry* court reasoned:

> The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if (1) they are substantially similar chemically to drugs that are on those schedules, (2) ... they produce similar effects on the central nervous system as drugs that are on those schedules, or (3) [they] are intended or represented to produce effects similar to those produced by drugs that are on those schedules. There is nothing vague about the statute.

*United States v. Granberry, supra,* 916 F.2d at 1010; *see United States v. Fisher,* 289 F.3d 1329 (11th Cir.2002)(approving of reasoning in *Granberry*); *United States v. Franz,* 818 F.Supp. 1478 (M.D.Fla. 1993)(same); *People v. Silver,* 230 Cal.App.3d 389, 281 Cal.Rptr. 354, 357 (1991)(reaching same conclusion as to equivalent state statute); *see also United States v. Roberts,* 363 F.3d 118 (2d Cir.2004)(concluding federal analogue statute is not unconstitutionally vague as applied to a particular substance); *United States v. Desurra,* 865 F.Supp 651 (5th Cir.1989)(same).

We are persuaded by the analysis in *Granberry* and adopt it as our own.

Defendant also contends the phrase substantially similar is unconstitutionally vague on its face in reference to both the chemical structure and the effect on the central nervous system. However, these arguments have been rejected by other jurisdictions, and we agree with those jurisdictions. *See United States v. Hofstatter,* 8 F.3d 316, 321 (6th Cir.1993)(holding "substantially similar" language in federal analogue statute is sufficiently precise to withstand vagueness challenge); *United States v. Brown,* 279 F.Supp.2d 1238, 1240–43 (S.D.Ala.2003)(concluding phrase substantially similar to the chemical structure is neither unconstitutionally vague nor ambiguous); *People v. Silver, supra,* 281 Cal.Rptr. at 356 (acknowledging term substantially similar had no scientific meaning, but rejecting vagueness challenge to state analog statute); *One Thousand Four Hundred Sixty–Two Dollars in U.S. Currency v. State,* 774 S.W.2d 17, 21 (Tex.App.1989)(rejecting contention that there is no ascertainable standard to determine the meaning of substantially similar).

We also disagree with defendant that these terms are unconstitutionally vague as applied to him. The prosecution's expert testified at trial that chemical similarity can be measured in a number of ways, such as by its component elements, the number and arrangement thereof, and the nature of the bonds between elements. However, she also testified that ephedrine and pseudoephedrine share the same chemical formula, have almost exactly the same structure, react with the same reagent and catalyst to produce methamphetamine, and are classified as stimulants. We therefore conclude the language of the statute was sufficiently clear to enable defendant to know pseudoephedrine is a controlled substance analog.

Defendant's reliance on *United States v. Forbes,* 806 F.Supp. 232 (D.Colo.1992), is misplaced. In *Forbes,* the prosecution charged the defendants with the distribution of alphaethyltryptamine (AET) as a controlled substance analogue under the federal statute, and the defendants contended the definition of a controlled substance analogue was unconstitutionally vague. The district court agreed the federal statute's definition was unconstitutionally vague as applied to AET because (1) there existed a great diversity of opinion whether the chemical structure of AET was substantially similar to certain schedule I controlled substances; (2)

disagreement existed regarding the methodology applicable to make this determination; and (3) absent scientific consensus or the scienter requirement in the definition, criminal culpability would turn on a battle of the experts. *United States v. Forbes, supra,* 806 F.Supp. at 233, 238.

Here, however, the chemical structure of AET was not at issue. Although the prosecution's expert witness's opinion was challenged during cross-examination, there was no conflicting evidence presented at trial concerning the chemical structure of pseudoephedrine or the methodology by which it should be analyzed. Thus, *Forbes* is distinguishable. *See United States v. Carlson,* 87 F.3d 440, 443 n. 3 (11th Cir.1996)(distinguishing *Forbes* where there was no disagreement in scientific evidence); *see also United States v. Washam,* 312 F.3d 926, 931 (8th Cir.2002)(experts need not agree on whether chemical structures are substantially similar under federal analogue statute).

We therefore conclude the term controlled substance analog is not vague as applied to pseudoephedrine.

We also reject defendant's argument that the phrase approved drug application, so long as such substance is in its intended and unconverted form is unconstitutionally vague on its face or as applied in this case. Though the pseudoephedrine was originally an over-the-counter cold medicine sold in tablet form and its chemical structure had not been converted, it was found dissolved in water in a household jar.

The use of the words intended and unconverted form appears to be unique, and we have found no other statute using this phrase. Nevertheless, we conclude the phrase contains terms with commonly accepted and nonscientific meanings, and persons of ordinary intelligence need not guess as to their meaning. We further conclude that where, as here, defendant was in possession of a jar containing tablets from numerous packages of pseudoephedrine which were dissolved in water and his wife testified regarding their purpose, the language of the statute was sufficiently clear to enable defendant and others similarly situated to know the pseudoephedrine was no longer in its intended

and unconverted form. *See United States v. Brown, supra,* 279 F.Supp.2d at 1241 (rejecting argument that scientific meaning of substantially similar to the chemical structure applies).

Nor are we persuaded by defendant's argument that the Act, like the federal statute, was intended to address the problem of designer drugs and that pseudoephedrine is not such a drug. The statutory language does not convey an intention by the Colorado General Assembly to limit application of the Act solely to designer drugs. *See* § 18–18–101, C.R.S.2003; *see also United States v. Roberts, supra* (rejecting identical argument).

We therefore conclude the definition of controlled substance analog in § 18–18–102(6) and as applied to defendant through §§ 18–18–405 and 18–18–204(2)(g) is not unconstitutionally vague.

## II.

■ Defendant next contends the trial court erred in denying his motion for judgment of acquittal. He maintains that (1) under the maxim expressio unius est exclusio alterius (the expression of one thing is the exclusion of another), pseudoephedrine is not a schedule II controlled substance or an immediate precursor; (2) the enactment in 2002 of § 18–18–412.5, C.R.S.2003—which made it illegal to possess pseudoephedrine with intent to use it as an immediate precursor to manufacturing methamphetamine—means that such activity was legal in 2000 when defendant was charged; and (3) the evidence was insufficient to show pseudoephedrine is a controlled substance analog because the cold tablets containing pseudoephedrine were in their intended and unconverted form in that the molecular structure of the pseudoephedrine, as opposed to its physical form, was unaltered. We reject all three arguments.

### A.

When construing a statute, courts must ascertain and give effect to the intent of the General Assembly. The statute must be read and considered as a whole and should be interpreted so as to give consistent, har-

monious, and sensible effect to all its parts. *See State v. Nieto,* 993 P.2d 493 (Colo.2000).

We presume that by amending a statute, the legislature intended to change the law, but this presumption does not apply when the amendment merely clarifies the preexisting statute. *See People v. Hale,* 654 P.2d 849 (Colo.1982).

A controlled substance means a drug, substance, or immediate precursor included in schedules I through V. Section 18–18–102(5), C.R.S.2003. An immediate precursor is a substance that is a principal compound commonly used and an immediate chemical intermediary used in the manufacture of a controlled substance. Section 18–18–102(15), C.R.S.2003.

Methamphetamine is included in schedule II, § 18–18–204(2)(c)(II), C.R.S.2003, and ephedrine is included as an immediate precursor to methamphetamine. Section 18–18–204(2)(f)(1), C.R.S.2003.

Defendant is correct that pseudoephedrine is *not* listed in schedule II either as a controlled substance or an immediate precursor. *See* § 18–18–204(2). *But see People v. Reed,* 56 P.3d 96, 98 (Colo.2002)(pseudoephedrine is a known precursor[ ] to methamphetamine); *People v. Kazmierski,* 25 P.3d 1207, 1214 (Colo.2001)(pseudoephedrine is a direct precursor to methamphetamine). However, the prosecution did not proceed on those bases. The prosecution's theory at trial was that pseudoephedrine is a schedule II controlled substance *analog* under § 18–18–102(6).

Whether a substance is a controlled substance analog is ordinarily a question of fact for the jury. *See United States v. Fisher, supra; United States v. Forbes, supra.* Thus, the trial court did not err in refusing to rule as a matter of law that defendant's possession of pseudoephedrine was not illegal.

### B.

Defendant next contends the enactment of § 18–18–412.5 in 2002—which made it illegal to possess pseudoephedrine with intent to use it as an immediate precursor in manufacturing methamphetamine—means such activity was legal before the statute was enacted. Again, we disagree.

In 2002, the General Assembly declared that persons are manufacturing methamphetamine . . . using nonprescription drugs that are readily and legally available and that it is necessary to make illegal the possession of such nonprescription drugs with the intent to use them as immediate precursors in manufacturing any controlled substance. Section 18–18–412.5(1), C.R.S.2003. The legislature also enacted § 18–18–412.5(2), C.R.S.2003, which provides: Notwithstanding any other provision of law to the contrary, no person shall possess ephedrine [or] pseudoephedrine . . . with the intent to use such product as an immediate precursor in the manufacture of any controlled substance.

Thus, defendant is correct that the possession of pseudoephedrine with intent to use it as an immediate precursor in manufacturing methamphetamine was not illegal under § 18–18–412.5 until August 2002. However, he was prosecuted for possession of a controlled substance *analog,* and not an immediate precursor. Although the 2002 statute enumerates certain legal nonprescription drugs as immediate precursors in manufacturing any controlled substance, *see* § 18–18–412.5(2), the statute has no bearing on whether pseudoephedrine could be a controlled substance analog, as defined in § 18–18–102(6)(a)(I), and thus illegal under § 18–18–204(2)(g).

Accordingly, we reject defendant's contention that the enactment of § 18–18–412.5 in 2002 precludes his conviction for possession of a controlled substance analog.

### C.

■ Defendant next contends the evidence was insufficient to show pseudoephedrine is a controlled substance analog. He maintains the evidence was insufficient to show: (1) the chemical structure of pseudoephedrine was substantially similar to that of a schedule II controlled substance; (2) the stimulant effect of pseudoephedrine was substantially similar to that of a schedule II controlled substance; and (3) the pseudoephedrine cold tablets contained in the jar were not in their intended

and unconverted form. He argues that because the molecular structure of the pseudoephedrine, as opposed to its physical form, was unaltered, the substance was excluded from the definition of a controlled substance analog in § 18–18–102(6)(b)(II). We disagree.

In reviewing an insufficiency of the evidence claim, we view the evidence presented as a whole and in the light most favorable to the prosecution to determine whether it is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *See Kogan v. People,* 756 P.2d 945, 950 (Colo.1988); *People v. Clemons,* 89 P.3d 479 (Colo.App.2003).

The prosecution is entitled to the benefit of every reasonable inference that may be fairly drawn from the evidence, even if the record also contains evidence to the contrary. *People v. Morrow,* 682 P.2d 1201 (Colo.App. 1983).

The trial court denied defendant's motion for judgment of acquittal after finding sufficient evidence that pseudoephedrine is substantially similar to a schedule II controlled substance based on its chemical structure and stimulant effect on the central nervous system and that it was not being used in its intended and unconverted form. We reach the same conclusion.

The prosecution's expert in forensic chemistry testified that (1) pseudoephedrine and ephedrine have the same chemical formula; (2) the structure of ephedrine is almost exactly the same as pseudoephedrine; (3) with the same reagent and catalyst, both ephedrine and pseudoephedrine produce methamphetamine; (4) ephedrine, pseudoephedrine, and methamphetamine are classified as central nervous system stimulants; (5) the pseudoephedrine found in defendant's residence was not in its intended and unconverted form; and (6) pseudoephedrine is a chemical analog of ephedrine.

A narcotics detective testified that based on his personal experience, ephedrine and pseudoephedrine produce a similar stimulant effect; based on his observation of others, methamphetamine produces the same effect but on a grander scale; and pseudoephedrine products are more cost effective and susceptible to extraction than ephedrine products. Defendant's wife testified that she and defendant used methamphetamine, described its effect on people, and called it speed.

Among the prosecution's exhibits was a pseudoephedrine cold medicine tablet package recovered from defendant's residence. The package contained 24 tablets, each of which contained 60 milligrams of pseudoephedrine. Defendant's wife identified the exhibit and testified that the night before the seizure, she stole five such packages of pseudoephedrine cold medicine. She stated that the jar contained the pseudoephedrine cold medicine tablets dropped into water and that the purpose of doing so was to extract the pseudoephedrine. Other exhibits were tablet and liquid cold and cough medications containing between 30 and 60 milligrams of pseudoephedrine per dosage.

We reject defendant's contention that he was convicted merely for possessing a legal, over-the-counter cold medicine. Rather, three significant factors are present here: the large quantity of tablets possessed, the fact they were dissolved in a jar of water, and his wife's statement regarding their purpose. The testimony concerning the condition in which the pseudoephedrine tablets were found, when compared to the usual intended dosage of similar pseudoephedrine products, is sufficient to conclude the multiple pseudoephedrine tablets dropped in water were not in their intended and unconverted form.

Contrary to defendant's contention, the prosecution's evidence showing the stimulant effect of pseudoephedrine did not require testimony from a toxicologist. The testimony of the wife and the detective concerning the effect of pseudoephedrine was rationally based on their individual experience and perception. *See* CRE 701.

Viewing the evidence under the relevant standard, we therefore conclude it was sufficient to support a conclusion beyond a reasonable doubt by a reasonable person that the pseudoephedrine was a controlled substance analog. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

### III.

■ Defendant next contends the trial court abused its discretion in denying his challenge for cause of a juror. We disagree.

To ensure a defendant's fundamental right to a trial by jurors who are fair and impartial, the trial court must exclude prejudiced or biased persons from the jury. Section 16–10–103(1), C.R.S.2003; *People v. Moya*, 899 P.2d 212 (Colo.App.1994).

The trial court is not required to dismiss a prospective juror for cause because he or she has indicated a possible source of bias. A prospective juror who makes a statement suggesting actual bias may sit on the jury if he or she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. Section 16–10–103(1)(j), C.R.S.2003; Crim. P. 24(b)(1)(X); *People v. Lefebre*, 5 P.3d 295 (Colo.2000).

If the trial court is satisfied a potential juror will render a fair and impartial verdict according to the law and the evidence submitted at trial, that person should not be disqualified. Section 16–10–103(1)(j); *People v. Sandoval*, 733 P.2d 319 (Colo.1987); *People v. Woellhaf*, 87 P.3d 142 (Colo.App. 2003)(*cert. granted on other grounds* Mar. 22, 2004, 2004 WL 556730).

Here, defense counsel asked during voir dire whether anyone believed it would be impossible to be fair if defendant did not testify. The juror in question stated that it would and that it might upset her, but not so much as to affect her decision making. She added that she might be guided by her gut feeling, but that she could follow instructions given by the court and would be able to find defendant not guilty if the prosecution did not prove him guilty beyond a reasonable doubt.

The court found that the juror indicated she would do what the Court instructed her to do ... even though she might not like it, and the court would instruct the jurors to follow the law whether they agree with it or disagree with it, and she indicated she can do that.

The trial court's findings are supported by the evidence, and we perceive no abuse of its discretion in denying defendant's challenge for cause of the juror.

### IV.

■ Finally, defendant contends the trial court erred in refusing his proffered jury instruction defining the term controlled substance analog. Again, we disagree.

It is the duty of the trial court to instruct the jury properly on all matters of law. *People v. Stewart*, 55 P.3d 107 (Colo.2002); *People v. Hayward*, 55 P.3d 803 (Colo.App.2002). In determining the propriety of a particular jury instruction, we view the instructions as a whole. *People v. Trujillo*, 83 P.3d 642 (Colo. 2004).

Jury instructions framed in the language of statutes are generally adequate and proper. *People v. Dago*, 179 Colo. 1, 497 P.2d 1261 (1972); *People v. Hayward, supra.* It is unnecessary to give an instruction that is encompassed in other instructions given by the court. *See People v. Harlan*, 8 P.3d 448 (Colo.2000); *People v. Gallegos*, 950 P.2d 629 (Colo.App.1997).

Defendant's proffered instruction was as follows:

> Controlled substance analog does not mean a listed controlled substance; or a substance for which there is an approved drug application, so long as such substance is in its intended and unconverted form; or a substance with respect to which an exemption is in effect for investigational use by a particular person under section 505 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 335, to the extent conduct with respect to the substance is pursuant to the exemption; or a substance with respect to which an exemption is in effect for investigational use by a particular person under section 505 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 335 to the extent conduct with respect to the substance is pursuant to the exemption; or any substance to the extent not intended for human consumption before an exemption takes effect with respect to the substance.

> A substance that is proven beyond all reasonable doubt not [to be] one of the above

can be a schedule two controlled substance if it is proven beyond all reasonable doubt that the chemical structure of [the substance] is substantially similar to the chemical substance in schedule II and [the substance] has a stimulant, depressant, or hallucinogenic effect on the central nervous system [substantially similar to that] of a controlled substance included in schedule II.

However, the trial court instructed the jury as follows:

Controlled Substance Analog means: (1) a substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule II and, (2) which has a stimulant effect on the central nervous system substantially similar to the stimulant effect on the central nervous system of a controlled substance included [in] schedule II. A Controlled Substance Analog does not include a substance for which there is an approved drug application, so long as such substance is in its intended and unconverted form.

In rejecting defendant's proffered instruction, the trial court explained that defendant's definition concerning what the term does not include was unnecessary and that the instruction given properly sets forth the prosecution's burden in this case.

We conclude the instruction given by the trial court, which was framed in the relevant language of the statutory definition, was adequate and proper, and it was unnecessary to give the additional instruction tendered by defendant. *See People v. Harlan, supra.*

Judgment affirmed.

Judge CASEBOLT and Judge PIERCE * concur.