*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0976**

State of Minnesota,
Respondent,

vs.

Jolene Carmel Goblish,
Appellant.

**Filed May 9, 2016
Affirmed
Smith, Tracy, Judge**

Lyon County District Court
File No. 42-CR-14-834

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY**, Judge

In this appeal from her conviction of first-degree driving while impaired when any amount of a controlled substance is in the body, appellant Jolene Goblish argues that the district court erroneously omitted an element of the charged offense from the jury

instructions. Because the district court properly instructed the jury on the elements of the offense, we affirm.

## FACTS

On May 19, 2014, Goblish drove to the department of corrections (DOC) office in Marshall to meet with her supervising agent and to take a urine test. There, Goblish provided a urine sample, and a preliminary test showed the presence of amphetamine and methamphetamine. The DOC agent who administered the test called the police. A Marshall police officer arrived at the DOC office, arrested Goblish, and transported her to the law enforcement center. At the law enforcement center, Goblish was read the implied consent advisory and consented to another urine test. The laboratory tests performed on Goblish's urine by the Minnesota Bureau of Criminal Apprehension (BCA) revealed the presence of amphetamine and methamphetamine.

Goblish was charged with first-degree driving while impaired when any amount of a controlled substance under schedule II was in the body in violation of Minn. Stat. §§ 169A.20, subd. 1(7), .24 (2012).[1] At trial before a jury, Goblish testified that she drove on May 19, 2014, but that she did not use illegal drugs on that day or in the recent past. The jury found Goblish guilty of first-degree driving while impaired, and Goblish was sentenced to 65 months in prison.

Goblish appeals.

---

[1] A second count for driving while impaired when under the influence of a controlled substance was dismissed before trial.

2

**D E C I S I O N**

Goblish argues that the district court plainly erred when it instructed the jury on the elements of driving while impaired when any amount of a controlled substance is in the body, and that the error affected her substantial rights. Specifically, she contends that "the jury instructions omitted an element of the offense [because] they failed to adequately explain that the jury was required to find that the substance in [her] body was a schedule-II controlled substance that *had a stimulant effect on the central nervous system*." (Emphasis added). Goblish did not request that the phrase "having a stimulant effect on the central nervous system" be included in the instructions, nor did she object to the instructions given.

Because Goblish "did not raise the objection in the district court that she now raises on appeal, her jury-instruction-omission claim is subject to the plain-error analysis." *State v. Peltier*, 874 N.W.2d 792, 799 (Minn. 2016). "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). "If those three prongs are met, we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). "An error is 'plain' if it is clear or obvious. Typically, a 'plain' error contravenes case law, a rule, or a standard of conduct." *Peltier*, 874 N.W.2d at 799 (citation omitted). "[A] district court commits plain error if it fails to properly instruct the jury on all elements of the offense charged." *Id.* at 797.

3

Goblish was convicted under Minn. Stat. § 169A.20, subd. 1(7), which states that "[i]t is a crime for any person to drive, operate, or be in physical control of any motor vehicle" when "the person's body contains any amount of a controlled substance listed in Schedule I or II." The statute that defines schedule-II controlled substances states:

> (a) Schedule II consists of the substances listed in this subdivision.
> . . . .
> (d) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances *having a stimulant effect on the central nervous system*:
> > (1) amphetamine, its salts, optical isomers, and salts of its optical isomers;
> > (2) methamphetamine, its salts, isomers, and salts of its isomers . . . .

Minn. Stat. § 152.02, subd. 3 (2012) (emphasis added).

The district court instructed the jury as follows:

> The elements of driving, operating, or being in physical control with the presence of a controlled substance in body are first, the defendant drove, operated, or was in physical control of a motor vehicle. . . . Second, at the time the defendant was driving, operating, or in physical control of a motor vehicle, the defendant's body contained any amount of . . . methamphetamine or amphetamine.

Goblish's plain-error argument centers on the omission of the phrase "having a stimulant effect on the central nervous system" from these instructions. *See id.*, subd. 3(d). This omission matters because, she argues for the first time on appeal, a form of methamphetamine—L-methamphetamine—is lawfully sold over the counter in some

4

products and, she suggests, does not have a stimulant effect on the central nervous system.[2]

We previously interpreted the statutory phrase "'any quantity of the following substances having a stimulant effect on the central nervous system'" in *State v. Ali*, 613 N.W.2d 796, 798-99 (Minn. App. 2000) (quoting Minn. Stat. § 152.02, subd. 2(6) (1998)), *review denied* (Minn. Sept. 13, 2000).[3] In *Ali*, we rejected the argument that, in order to support a charge for possession of a schedule-I controlled substance, the state must prove that the *quantity* of the substance possessed was sufficient to produce a stimulant effect. *Ali*, 613 N.W.2d at 800. Goblish argues that if the phrase "having a stimulant effect on the central nervous system" does not modify "quantity," it must modify "substances," and that the state therefore must prove as an element of the offense that a controlled substance listed in schedule II has a stimulant effect on the central nervous system. *See* Minn. Stat. § 152.02, subd. (3)(d).

We disagree. While *Ali* addressed the phrase "having a stimulant effect" in the context of the quantity of the drug, our reasoning there applies equally here. *See Ali*, 613 N.W.2d at 798-800; *see also* Minn. Stat. § 152.02, subd. 3(d). In *Ali*, we observed that

---

[2] There is nothing in the record regarding different types of methamphetamines or their "stimulant effect on the central nervous system." The only arguably related evidence presented at trial was given by the BCA agent, who testified that amphetamine and methamphetamine are both stimulants.

[3] Although the court's reasoning in *Ali* was in respect to a schedule-I controlled substance, it is applicable to a schedule-II controlled substance because the applicable statutes defining a schedule-I controlled substance and a schedule-II controlled substance are virtually identical, and there is no basis for not applying the same interpretation of the phrase "having a stimulant effect on the central nervous system" to both statutes. *See* Minn. Stat. § 152.02, subds. 3 (2012), 2(6) (1998).

5

the schedules of controlled substances in Minnesota statutes—like those in other states—classify a number of different substances using phrases such as "having a stimulant effect," "having a depressant effect," "having a potential for abuse associated with a depressant effect," and "having a potential for abuse associated with a stimulant effect." *Id.* (citing Minn. Stat. § 152.02, subds. 2(5), 3(3), 3(4) (1998), 4(2), 4(3) (Supp. 1999)). We adopted the reasoning of other states' courts that these phrases "were intended as legislative guidance for the classification and categorization of new controlled substances and were not an element required to be proven by the state." *Id.* at 799. Thus, we held that "having a stimulant effect" is not an element of the offense. *Id.* at 800.

The district court instructed the jury that it must find that the defendant's body contained any amount of methamphetamine or amphetamine, both of which the legislature has included as schedule-II controlled substances. *See* Minn. Stat. § 152.02, subd. 3(d)(1)-(2). As we held in *Ali*, the statutory phrase "having a stimulant effect on the central nervous system" does not add an element that the state must prove. *See Ali*, 613 N.W.2d at 799; *see also* Minn. Stat. § 152.02, subd. 3(d). The district court therefore did not err by omitting it as an element of the offense in jury instructions. Because we conclude that no error was committed, we need not consider the second and third prongs of the plain-error test.

**Affirmed.**