The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Gerald HAYWARD, Defendant–Appellant.

No. 99CA1507.

Colorado Court of Appeals,
Div. V.

Feb. 14, 2002.
Rehearing Denied April 11, 2002.
Certiorari Denied Oct. 15, 2002. *

* Justice COATS does not participate.

Ken Salazar, Attorney General, Cynthia A. Greenfield, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Willett & Mestas, LLC, Jonathan S. Willett, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Gerald Hayward, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault. Defendant also appeals the sixteen-year sentence imposed on that conviction. We affirm.

The victim testified that she answered the door of her residence and encountered defendant, her estranged husband, who was at the time subject to a restraining order. According to the victim, defendant forced his way into the residence and repeatedly stabbed her with a knife.

In contrast, defendant testified that the victim answered the door brandishing a knife. According to defendant, the victim sustained accidental injuries during a struggle for control of the knife. Defendant admitted that he was aware of the restraining order that prohibited him from being at the victim's residence.

I.

Defendant first argues that the trial court erred by instructing the jury concerning the victim's right to defend herself in her dwelling in conjunction with its instructions on the affirmative defense of self-defense. We disagree.

■ A defendant is entitled to a properly instructed jury. *People v. Hill*, 182 Colo. 253, 512 P.2d 257 (1973).

■ In discharging the duty to instruct the jury properly on all matters of law, the trial court may instruct the jury concerning a principle of law that is related to an issue in controversy. *See People v. Gilbert*, 12 P.3d 331, 340 (Colo.App.2000).

■ Jury instructions framed in the language of statutes are adequate and proper. *People v. Dago*, 179 Colo. 1, 497 P.2d 1261 (1972); *People v. Burke*, 937 P.2d 886 (Colo. App.1996).

Section 18–1–704(1), C.R.S.2001, defines the affirmative defense of self-defense in pertinent part as follows:

[A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

■ A reasonable belief that one is defending against the use of unlawful force is the touchstone of self-defense. *See People v. Silva*, 987 P.2d 909 (Colo.App.1999). The defendant must hold a reasonable belief that the appearance of danger, whether real or apparently real, justifies the actions taken. *Beckett v. People*, 800 P.2d 74 (Colo.1990). Self-defense under § 18–1–704(1) takes into account both the reasonable belief and the actual belief of the defendant. *People v. Willner*, 879 P.2d 19 (Colo.1994).

Here, the trial court correctly instructed the jury that:

It is an affirmative defense to the crime of . . . assault in the second degree that the defendant used physical force upon another person:

(1) in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and

(2) he used a degree of force which he reasonably believed to be necessary for that purpose, and

(3) he is not the initial aggressor.

The trial court further instructed the jury that defendant "was not obliged to retreat or flee to save his life, but had the right to stand his ground and use deadly force if he reasonably believed the use of such force was necessary for self-protection."

Finally, the court instructed the jury, over defendant's objection, as follows:

Any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

This latter instruction was a verbatim statement of Colorado's so-called "make my day" law, § 18–1–704.5(2), C.R.S.2001.

■ We perceive no error in the trial court's decision to give the latter instruction. By definition, self-defense is only available as an affirmative defense if a defendant "reasonably believes" there is use or imminent use of "unlawful physical force" by the victim. Section 18–1–704(1). In this case, whether the victim used unlawful physical force (as asserted by defendant) turned on the question whether defendant unlawfully entered the dwelling with intent to commit a crime against her by means of physical force (as asserted by the victim).

In *People v. Toler*, 9 P.3d 341 (Colo.2000), the supreme court discussed, albeit in a different context, whether trespassers have a right to self-defense. The court first stated that a person who is not where he or she has "a right to be" in many instances retains the privilege to use force in self-defense irrespective of his or her status as a trespasser. However, the court nevertheless noted that, in the context of a duty to retreat, a trespasser using force in self-defense is not nec-

essarily in the same position as an "innocent person." The court noted that the occupant of a dwelling may lawfully use physical force, including deadly force, against trespassers in defense of a dwelling under the "make my day" provisions. The court then stated:

Under [§§ 18–1–704.5 and 18–1–705, C.R.S.2001], a trespasser who is subjected to *lawful* physical force by the owner or occupant of property or premises has no privilege to use physical force in self-defense because the privilege under section 18–1–704 applies only when the defendant faces *unlawful* force. Thus, because trespassers face the possibility of lawful physical force by a person defending against the trespass, they are not in the same position as an otherwise innocent person or "true man" with respect to the privilege of using force in self-defense.

9 P.3d at 353 (emphasis in original).

Accordingly, and contrary to defendant's contention, whether he was legally entitled to employ force in self-defense and further to obtain an instruction at trial concerning it was dependent upon whether he made an unlawful entry into the dwelling. Because those facts were in dispute here, the instruction was properly given.

Furthermore, the question whether defendant's belief that he was defending against the use of unlawful force was objectively reasonable would turn in part on whether he knew or should have known about the victim's right to use force while in her dwelling and the nature of the force she could use. Because every person is generally presumed to know the law, see *Dikeman v. Charnes*, 739 P.2d 870 (Colo.App.1987), it is presumed that defendant knew the victim could employ lawful force against him if he unlawfully entered her dwelling.

We reject defendant's suggestion that this instruction shifted the burden of proof by requiring him to prove that the victim's use of physical force was unlawful. The elemental instruction defining second degree assault informed the jury that the prosecution had the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt. The instruction outlining the circumstances in which the occupant of a dwelling may lawfully use force against an intruder did not establish the existence of those circumstances or otherwise lessen the prosecution's burden of disproving defendant's assertion that the victim used unlawful physical force.

Nor are we persuaded by defendant's alternative argument that it was error to give this instruction because the court's self-defense instruction stated that the defense was unavailable if defendant was the "initial aggressor" without also explaining that an initial aggressor can act in self-defense to unlawful physical force after he or she has effectively communicated an intent to withdraw from the affray. Defendant did not object to the absence of such language. More importantly, there was no evidence presented that would have supported an instruction on withdrawal by an initial aggressor.

Moreover, the trial court did instruct the jury, as set forth above, that defendant was not obligated to retreat before defending himself. We specifically do not address the propriety of that instruction under *People v. Toler, supra,* in the context of this case because, even if erroneously given, the instruction inured to defendant's benefit by giving him a greater right to use self-defense than might otherwise have been available.

Defendant does not argue that further instruction concerning the use of the "make my day" instruction should have been given. Nonetheless, in our view the better practice would be for the trial court to give an instruction to the jury indicating that, in determining whether a defendant has unlawfully entered a dwelling and whether the defendant reasonably believed that unlawful force was used or imminent, the statutory "make my day" provision should be considered. See *People v. Burke, supra* (whether to give additional written jury instructions that properly state the law and fairly and adequately cover the issues is a matter committed to the sound discretion of the trial court).

## II.

Defendant next argues that the trial court's responses to the jury's communica-

tions concerning its deliberations had the effect of coercing a verdict. We are not persuaded.

In *People v. Lewis*, 676 P.2d 682, 689 (Colo.1984), the supreme court established guidelines for instructing a deadlocked jury deliberating a charge involving lesser offenses:

> Before giving any additional instruction calculated to avert a mistrial due to jury disagreement over the level of offense, the court should make certain inquiries of the jury. In making these inquiries care must be taken to avoid asking the jury how it is numerically divided and also to avoid disclosure by the jury as to the particular offenses about which a deadlock might exist. Also, any additional instruction ultimately given to the jury should be in typewritten form, should be read by the judge to the jury in open court, and then taken by the jury when it again resumes its deliberations.

> The court should first ask the jury whether there is a likelihood of progress towards a unanimous verdict upon further deliberation.... If the jury indicates that the deadlock is such that progress towards a unanimous verdict is unlikely, the court should then inquire whether the jury is divided over guilt as to any one of the offenses and nonguilt as to all offenses, or instead, whether the division centers only on the particular degree of guilt.... If ... the jury deadlock centers solely on a particular degree of guilt, rather than on the issue of guilt or nonguilt, then the court should consider an additional instruction charging the jury to return a guilty verdict on the lesser offense as long as every essential element of the lesser offense is necessarily included in the greater offense and all jurors unanimously agree on the defendant's guilt as to either the lesser or greater offenses submitted to them for their consideration.

■ The decision whether to give a *Lewis* instruction or declare a mistrial is a matter of trial court discretion. *People v. Barnard*, 12 P.3d 290, 295 (Colo.App.2000).

Here, after deliberating for part of a day, the jury sent out a note to the court stating that it could not reach a verdict. Defense counsel suggested that, because lesser included offenses had been submitted to the jury, the court should inquire whether the jurors had reached a unanimous verdict as to any charge. The trial court declined to make such an inquiry and instead directed the jurors to continue deliberations.

Later that day, defense counsel again urged the court to ask the jurors whether they were deadlocked concerning the degree of defendant's guilt. The trial court again declined to make such an inquiry and discharged the jury for the weekend.

The jury resumed its deliberations the following week. After several hours, the jurors submitted a second note to the court, which stated: "If we can't agree unanimously on any of the charges does it become a no verdict by default or do we have to agree on no verdict[?]" Based on this communication, defense counsel asked the court to declare a mistrial or, alternatively, to inquire as to whether the jurors were deadlocked regarding guilt and innocence or regarding the degree of guilt. The trial court stated that it would not declare a mistrial without first determining the nature of the jurors' deadlock.

Upon inquiry from the trial court, the jury foreperson indicated that further deliberations would not likely result in a unanimous verdict, that the jurors did not disagree as to "guilt versus nonguilt," but that there was division concerning the degree of defendant's guilt. Based on the foreperson's disclosures, the trial court instructed the jury, orally and in writing, as follows:

> If the jury is unable to reach a verdict solely on the particular degree of guilt of the defendant, the jury shall return a guilty verdict on the lesser offense as long as all jurors unanimously agree on the defendant's guilt as to either the lesser or greater offense submitted to you for your consideration.

Shortly thereafter, the jury returned a verdict finding defendant guilty of second degree assault, a lesser included offense of the offense charged.

We perceive no abuse of discretion in the trial court's actions. Based on the timing and substance of the jury's second communication, the trial court had reasonable grounds to defer ruling on defendant's mistrial motion in order to conduct the Lewis inquiries (inquiries which, it must be noted, defense counsel had twice before asked the court to make). Once the trial court learned that the jury was deadlocked with respect to the degree of defendant's guilt, it was appropriate for the court to submit a *Lewis* instruction.

## III.

Defendant contends the trial court erred by imposing an enhanced sentence pursuant to the crime of violence statute because the jury did not specifically find that he had committed a crime of violence. The record indicates otherwise.

Defendant was convicted of second degree assault in violation of § 18–3–203(1)(b), C.R.S.2001 (intentional infliction of bodily injury by means of a deadly weapon). The use of a "deadly weapon" is an element of this offense, and it is a per se crime of violence under § 18–3–203(2)(c), C.R.S.2001, requiring enhanced sentencing pursuant to § 16–11–309, C.R.S.2001 (a person convicted of a crime of violence shall be sentenced to a term of incarceration of at least the midpoint in the presumptive range, but not more than twice the maximum presumptive range sentence). *See People v. Banks*, 9 P.3d 1125, 1130 (Colo.2000)(because second degree assault is a per se crime of violence, the prosecution need not plead and prove a separate crime of violence under § 16–11–309(4) and (5) in order for the sentencing provisions of § 16–11–309(1) to apply).

Thus, by its verdict, the jury in this case necessarily found beyond a reasonable doubt that defendant committed second degree assault "by means of a deadly weapon."

Accordingly, we also reject defendant's argument that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), mandates a different result. *See People v. Clifton*, —— P.3d ——, 2001 WL 1630375 (Colo.App. No. 00CA0977, Dec. 20, 2001)(*Apprendi* is relevant only where a judge-made factual determination increases the maximum statutory penalty for the particular crime).

## IV.

Finally, defendant argues that the trial court abused its discretion by sentencing him to sixteen years in the custody of the Department of Corrections (DOC). We disagree.

Sentencing is discretionary, and a sentence constitutes an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair. Absent a showing that the court's wide discretion in sentencing was clearly abused, a sentencing decision will not be reversed on appeal. *People v. Harding*, 17 P.3d 183, 187 (Colo.App.2000).

In exercising its sentencing discretion, a trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public. See *People v. Fuller*, 791 P.2d 702, 708 (Colo.1990).

Second degree assault is a class four felony. Section 18–3–203(2)(b), C.R.S.2001. The presumptive sentencing range for a class four felony is normally two to six years imprisonment. Section 18–1–105(1)(a)(V)(A), C.R.S.2001. However, because second degree assault is a crime of violence, it is also an "extraordinary risk of harm" offense with an increased maximum presumptive range sentence of eight years imprisonment. Section 18–1–105(9.7), C.R.S.2001. Thus, under the crime of violence sentencing statute, § 16–11–309, the maximum possible sentence in this case was sixteen years imprisonment (twice the maximum presumptive range sentence).

The trial court determined that a sixteen-year sentence was appropriate because defendant had committed an especially vicious attack in violation of a restraining order when the victim's young son was present in the house. The record supports these findings and, contrary to defendant's suggestion, also shows that the trial court gave due consideration to defendant's rehabilitative

potential and his employment history. Accordingly, we perceive no abuse of discretion in the trial court's sentencing decision.

The judgment and sentence are affirmed.

Judge DAVIDSON and Judge NIETO concur.