23CA1700 Peo v Banks 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1700
Adams County District Court No. 22CR889
Honorable Kyle Seedorf, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Hayden Allen Banks,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Hayden Allen Banks, appeals his conviction for second degree murder. He argues, among other things, that the district court reversibly erred in instructing the jury on the right of a trespasser to use physical force in self-defense. Because we agree, we reverse the conviction and remand for a new trial.

## I.    Background

¶ 2    David Islas was a resident at the Venture Inn hotel. He and Banks were friends, having known each other for many years. One night, Banks went to Islas's room to retrieve a counterfeit $100 bill.

¶ 3    Surveillance footage shows Banks leaving Islas's room and standing just outside the door talking to Islas for a couple minutes. When Islas re-entered the room (and was no longer visible on video), Banks stepped into the doorway, with one foot inside, and remained there for several more minutes — apparently still talking to Islas.

¶ 4    After about ten minutes, the door began to close from the inside, while Banks kept his foot in the doorway. Seconds later, as the door closed, Banks drew a gun, reached into the room, and fatally shot Islas. In a subsequent police interview, Banks claimed that Islas had pointed a gun at his head and that he had drawn his

own gun in response, accidentally firing when the door closed on his arm. A gun was found next to Islas's body after the shooting.

¶ 5      Banks was charged with first degree murder. At trial, there was no dispute that he shot and killed Islas. But he argued he had acted in self-defense. The prosecution countered that Banks was not entitled to claim self-defense because Islas was legally authorized to use force to defend his premises. A jury convicted Banks of second degree murder as a lesser included offense.

## II.      Defense of Premises Instruction

¶ 6      Banks contends that the district court erred by (1) instructing the jury on defense of premises and (2) including in that instruction that a trespasser who is subject to lawful physical force has no privilege to use physical force in self-defense. Because we agree with Banks's second argument, we address that argument first.

### A.      Additional Background

¶ 7      At Banks's request, the district court instructed the jury on self-defense. Consistent with section 18-1-704(1), C.R.S. 2025, the instruction provided that Banks was legally authorized to use physical force "to defend himself . . . from what he reasonably believed to be the use or imminent use of unlawful physical force."

2

¶ 8      The prosecution requested an instruction on the use of physical force in defense of premises under section 18-1-705, C.R.S. 2025.  The instruction provided that Islas was legally authorized to use physical force as "reasonably necessary to prevent or terminate what he reasonably believed was the commission or attempted commission of an unlawful trespass."  The instruction also included a definition of trespass and attempted trespass.

¶ 9      Defense counsel objected.  Noting that Banks had not been charged with trespass, he argued there was not sufficient evidence to support the instruction because there was no evidence that Banks had trespassed.  The prosecutor responded that the video alone was sufficient to establish a trespass because it showed Islas "closing the door and [Banks] put[ting] his foot out to block that."

¶ 10     The district court agreed to give the instruction, explaining that a trespass "includes remaining on the premises of someone else when you are not wanted."  It ruled that Islas's attempt to close the door, along with Banks's statement that he was "hit in the arms" and "bruised," provided a basis for the instruction.

¶ 11     The prosecutor then requested a separate instruction, based on *People v. Toler*, 9 P.3d 341, 353 (Colo. 2000), that "when a

3

person is a trespasser . . . they no longer get to avail themselves of self-defense." Defense counsel continued to object to any instruction involving trespass, but given the court's ruling on the defense of premises instruction, he asked the court to choose between the two instructions, asserting that there was "a lot of duplicative language." The court proposed adding the requested language from *Toler* at the end of the defense of premises instruction. Without waiving his objection to any trespass instruction at all, defense counsel agreed to that approach.

¶ 12 The district court gave the following defense of premises instruction at trial:

> The evidence presented in this case has raised the issue of "physical force in defense of premises."
>
> Mr. Islas was legally authorized to use physical force upon another person if:
>
> 1. Mr. Islas was in possession or control of any building, realty, or other premises, and
>
> 2. Mr. Islas used reasonable and appropriate physical force, when and to the extent it was reasonably necessary to prevent or terminate what he reasonably believed was the commission or attempted commission of an unlawful

4

trespass by the other person in or upon the building, realty, or premises.

A trespass occurs when a person knowingly and unlawfully enters or remains in or upon any premises of another. An attempted trespass occurs when a person is engaged in conduct constituting a substantial step toward the commission of trespass.

A trespasser who is subjected to lawful physical force by the owner or occupant of property or premises has no privilege to use physical force in self-defense because the privilege applies only when a person faces unlawful force.

### B.     Applicable Law and Standard of Review

¶ 13     The district court must correctly instruct the jury on all matters of law for which there is evidentiary support. *Castillo v. People*, 2018 CO 62, ¶ 34. When the court instructs the jury on the affirmative defense of self-defense, it must also instruct the jury on any exception to that defense that is supported by "some evidence." *Galvan v. People*, 2020 CO 82, ¶ 25. "Some evidence" means evidence that would support a "reasonable inference" that the exception applies. *People v. Roberts-Bicking*, 2021 COA 12, ¶ 31.

¶ 14     We review de novo whether the evidence was sufficient to support a requested jury instruction and whether the jury instructions as a whole accurately informed the jury of the

5

governing law. *O'Shaughnessy v. People*, 2012 CO 9, ¶ 13; *Garcia v. People*, 2022 CO 6, ¶ 16. If the instructions correctly state the applicable law, we review the district court's decision to give or deny a particular instruction for an abuse of discretion. *Garcia*, ¶ 18.

¶ 15 Although Banks preserved his argument that the defense of premises instruction should not have been given at all, he did not object to the content of the instruction, including its final sentence that he challenges on appeal. We therefore review the inclusion of that language for plain error. *See Martinez v. People*, 2015 CO 16, ¶ 15 (holding that objection to giving of instruction did not preserve argument that instruction was legally erroneous). For an error to be plain, it must be both obvious and substantial. *Hoggard v. People*, 2020 CO 54, ¶ 13. To satisfy this standard, Banks must show not only that the instructional error "affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *Id.* (citation omitted).

### C. Right of Trespasser to Self-Defense

¶ 16 Banks contends that the district court reversibly erred by instructing the jury that "[a] trespasser who is subjected to lawful physical force by the owner or occupant of property or premises has

no privilege to use physical force in self-defense because the privilege applies only when a person faces unlawful force." Because this instruction omits consideration of the trespasser's reasonable belief that the occupant's force was unlawful — a principle of particular significance under the facts of this case — we agree.

### 1. Error

¶ 17 Section 18-1-704(1) defines the affirmative defense of self-defense:

> [A] person is justified in using physical force upon another person in order to defend himself . . . from what he *reasonably believes* to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

(Emphasis added.) The "touchstone" of self-defense is "[a] reasonable belief that one is defending against the use of unlawful force." *People v. Hayward*, 55 P.3d 803, 805 (Colo. App. 2002).

¶ 18 The nature of that right does not change for a trespasser. *See Toler*, 9 P.3d at 352 ("[T]respassers do not forfeit their rights to self-defense merely by the act of trespassing."). Although the trespass may make the property occupant's use of "reasonable and appropriate physical force" lawful under section 18-1-705, the

7

question is not simply whether the force is lawful. It is whether the trespasser reasonably believes it is not — or reasonably believes that unlawful force is imminent. § 18-1-704(1). Thus, a trespasser surrenders the right to use physical force in self-defense only if the property occupant's use of force was lawful *and the trespasser did not reasonably believe otherwise. See Hayward*, 55 P.3d at 805.

¶ 19 The problem with the jury instruction in this case is that it omitted the second half of this inquiry. That omission was particularly problematic under the facts of this case because the jury reasonably could have found that, even if Islas's use of force was lawful, Banks reasonably believed it was not. In particular, a person may not lawfully use *deadly* force in the defense of premises except under circumstances not present in this case.[1] *See* §§ 18-1-704.5(2),18-1-705, C.R.S. 2025. But Banks claimed that Islas had pointed a gun at his head. Even though Islas did not

---

[1] The district court did not instruct the jury on when deadly force can (and cannot) be used in the defense of premises. And Banks does not directly challenge that omission on appeal. But because Banks is presumed to know the law, *see People v. Hayward*, 55 P.3d 803, 806 (Colo. App. 2002), those limitations nevertheless inform whether he could have reasonably believed Islas's imminent use of force was unlawful, even if the jury found that it was not.

shoot — and thus, did not in fact use deadly force — a jury could have found that Banks reasonably believed such force was imminent. In that case, Banks would have been justified in using physical force — including deadly physical force — in self-defense. *See* § 18-1-704(1), (2)(a); *cf. People v. Chirico*, 2012 COA 16, ¶¶ 9-10 (holding that, even if the victim lawfully used force to effect a citizen's arrest, the defendant had a right to self-defense if he reasonably believed the force used or threatened was not in furtherance of a lawful citizen's arrest).

¶ 20    That is how this case differs from the passage in *Toler* from which the language of the instruction was drawn. *See Toler*, 9 P.3d at 352-53. That passage addressed a person's right to use *deadly* force against a trespasser under section 18-1-704.5 and the last sentence of section 18-1-705. Those statutes prescribe circumstances — not present here — under which a property occupant may use *any* degree of physical force, including deadly force. *See* §§ 18-1-704.5(2), 18-1-705. Thus, because a trespasser is presumed to know the law, the trespasser would have no reason to believe the occupant's use of deadly force was unlawful when those circumstances are present. *See Hayward*, 55 P.3d at 806;

9

*see also Chirico*, ¶ 16 ("[U]nlike under section 18-1-704.5(2), where any force used by a dwelling's occupant against a trespasser is unlawful, and thus self-defense is never justified, under section 18-1-704, the relevant inquiry remains the person's reasonable belief . . . that he or she is faced with *unlawful* force . . . ."). In any event, notwithstanding the language in *Toler* that "a trespasser who is subjected to *lawful* physical force . . . has no privilege to use physical force in self-defense," its broader holding was that a trespasser "retains the privilege to use force in self-defense" in accordance with section 18-1-704. *Toler*, 9 P.3d at 352, 353.

¶ 21 The instructional error in this case is similar to that in *Chirico*. In *Chirico*, the defendant claimed self-defense, and the prosecution argued the victim's use of force was a lawful attempt to effect a citizen's arrest. *Chirico*, ¶ 5. Although the district court correctly instructed the jury on self-defense and the law of citizen's arrest, it also instructed the jury that "it is presumed that the defendant knew the person could employ lawful force against him if the defendant committed a crime in the person's presence." *Id.* at ¶¶ 5, 10. The division held that the instruction was erroneous because (1) it may have misled the jury to assume that, if the defendant had

broken the law, he would have reasonably recognized the force used by the victim as lawful; and (2) it "may have precluded the jury from considering whether, under the circumstances as a whole, it was reasonable for [the] defendant to believe that the victim's use of force was not in furtherance of an arrest." *Id.* at ¶ 14.

¶ 22     Similarly, in this case, though the court correctly instructed the jury on self-defense and defense of premises, it then indicated that the sole issue was whether Islas's use of force was lawful. This "precluded the jury from considering whether, under the circumstances as a whole, it was reasonable for [Banks] to believe" otherwise. *Id.* Contrary to what the jury was told, self-defense does not "appl[y] only when a person faces unlawful force." It also applies when a person *reasonably believes* they face unlawful force.

¶ 23     The People point out that the self-defense jury instruction did incorporate the concept of reasonable belief, correctly explaining that the defendant was legally authorized to use physical force to defend himself "from what he reasonably believed to be the use or imminent use of unlawful physical force." The problem, however, is that the final sentence of the defense of premises instruction told the jury that the right to self-defense does not apply when a

11

trespasser is "subjected to lawful physical force" by the occupant. Thus, if the jury found that Islas's use of force was lawful, it would have had no reason to consider the self-defense instruction.

¶ 24   We also reject the People's contention that the limitations on the use of *deadly* force in the defense of premises are irrelevant in this case because Banks did not die — and thus, by definition, Islas did not use deadly force. *See People v. Ferguson,* 43 P.3d 705, 707 (Colo. App. 2001); § 18-1-901(3)(d), C.R.S. 2025 (defining deadly force as force "which does, in fact, produce death"). Banks was entitled to defend himself from what he reasonably believed to be the use *or* imminent use of unlawful force. § 18-1-704(1). Thus, the question was not whether Islas actually used unlawful deadly force. It was whether Banks reasonably believed he was about to.

### 2.   Obvious and Substantial

¶ 25   We further conclude that the instructional error was obvious, even though the language mirrored language in *Toler*. *See Evans v. People,* 706 P.2d 795, 800 (Colo. 1985) (noting that "use of an excerpt from an opinion in an instruction is generally an unwise practice"). Colorado law is clear that the right to self-defense turns not on whether the victim actually used or intended to use unlawful

physical force but on "whether, under the totality of the circumstances, it was reasonable" for the defendant to believe that they did. *Kaufman v. People*, 202 P.3d 542, 551 (Colo. 2009); *see also Hayward*, 55 P.3d at 805 (noting that the "touchstone of self-defense" is the defendant's reasonable belief). And *Toler* confirms that a trespasser does not surrender this right. 9 P.3d at 352. By placing the focus solely on the actual lawfulness of Islas's actions rather than on Banks's reasonable perception of those actions, the district court obviously erred. *See Kaufman*, 202 P.3d at 551.

¶ 26    For the reasons above, we also conclude that the error was substantial. Banks's theory of defense was that Islas had pointed a gun at him, prompting Banks to shoot in self-defense. But the jury instruction precluded the jury from considering that defense if it found that Banks had trespassed. The prosecutor then reinforced this error in closing argument by repeatedly arguing that Banks had no right to self-defense if Islas's conduct was lawful. *See Toler*, 9 P.3d at 354 (holding that instructional error was plain error where prosecutor "focus[ed] the jury on the erroneous portion" of the instruction by telling the jury the defendant was "not entitled to claim self-defense because he was a trespasser"). For example, the

13

prosecutor told the jury that (1) if Banks trespassed, "any force [Islas] used against [Banks] . . . is lawful"; (2) in that case, "Banks doesn't get the benefit of self-defense"; (3) "if [Islas] is lawfully protecting himself and his property, [self-defense] doesn't apply"; and (4) Banks "is a trespasser.  He's not entitled to self-defense." These statements were all legally incorrect, as explained above.

¶ 27    The People contend that the error was not substantial because the evidence of guilt was strong.  But the evidence they cite does little more than show that Banks shot and killed Islas — a point that was not in dispute.  The question was whether he did so in self-defense.  And because Islas does not appear in the video, the evidence on that point was "far from overwhelming."  *People v. Sloan*, 2024 COA 52M, ¶ 52; *see also People v. McClelland*, 2015 COA 1, ¶ 26 (concluding that district court plainly erred by failing to properly instruct jury on self-defense where self-defense was the "primary issue at trial").  To the contrary, "the particular facts in this case may have supported a jury's acceptance of [Banks's] self-defense claim had it not been limited in its consideration" of that defense.  *Kaufman*, 202 P.3d at 551.  We therefore conclude that

there is "a reasonable possibility that the error contributed to [Banks's] conviction," and we reverse that conviction.  *Id.* at 551-52.

### D.    Evidence of Trespass

¶ 28    Banks also argues that the district court erred by giving a defense of premises instruction because there was insufficient evidence that he trespassed.  Because this issue is likely to arise on remand to the extent the instruction was based on the surveillance video, we address it, even though we are reversing Banks's conviction.  *See Venalonzo v. People*, 2017 CO 9, ¶ 2 n.2.

¶ 29    Although a close call, we conclude that the video was sufficient to support the instruction.  Under section 18-1-705, a person may use "reasonable and appropriate physical force upon another person when and to the extent that it is reasonably necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of an unlawful trespass."  A person commits trespass "if such person unlawfully enters or remains in or upon premises of another," § 18-4-504(1), C.R.S. 2025 — that is, "when the person is not licensed, invited, or otherwise privileged to do so," § 18-4-201(3), C.R.S. 2025.

15

¶ 30    The video showed Banks standing with one foot in Islas's room — where Islas lived — for several minutes.  At one point, the door started to close from the inside.  As it did, Banks stepped backward but kept his foot in the doorway, preventing the door from closing.  He then reached his arm into the doorway, again stopping the door from fully closing.  A jury could reasonably infer from this evidence that Islas told Banks to leave — i.e., revoked his invitation to remain in the room — and Banks refused to do so.  *See Roberts-Bicking*, ¶ 31.  That is a trespass.[2]  *See* §§ 18-4-504(1), 18-4-201(3).

¶ 31    Banks maintains that the five seconds between the door starting to close and the shooting was too brief to show a volitional act of trespass.  *See* § 18-1-501(9), C.R.S. 2025 ("'Voluntary act' means an act performed consciously as a result of effort or determination . . . .").  We disagree.  Banks neither left nor attempted to leave when the door began to close.  Instead, the video captures three distinct phases, albeit occurring in a matter of seconds: (1) the door begins to close; (2) Bank steps back; and

---

[2] The People do not argue that the evidence was sufficient to show that Banks was trespassing in the minutes before Islas attempted to shut the door, as Banks stood half-in, half-out of Islas's room.

16

(3) Bank places his foot to block the door from closing. At a minimum, that third step was sufficient to support a finding that Banks voluntarily remained after he was told to leave.

¶ 32   In reaching this conclusion, we acknowledge that Banks's actions are "open to different . . . reasonable[] interpretations" — including the view that he did not voluntarily remain on the premises when he left five seconds after he was told to leave. *Roberts-Bicking*, ¶ 40. But when the evidence permits "conflicting reasonable inferences," the jury must choose between them as part of its "fact-finding function." *People v. Perez*, 2016 CO 12, ¶ 31. By instructing the jury on the definition of trespass, the district court "appropriately provided the jury with a necessary legal principle to permit it to perform that function." *Roberts-Bicking*, ¶ 40.

¶ 33   We therefore conclude that the district court did not err by instructing the jury on physical force in the defense of premises.

### III.   Banks's Statements to Police

¶ 34   Banks raises two issues concerning the admission of his recorded police interview. First, he argues that the district court erred by denying his motion to suppress his statements. Second, he contends that, after admitting the interview, the court erred by

17

granting the prosecution's request to redact certain statements Banks made during that interview. Because the admissibility of Banks's statements is likely to arise on retrial, we address these issues.[3] *See Venalonzo*, ¶ 2 n.2. We perceive no error.

## A.     Additional Background

¶ 35     After his arrest, Banks was taken to the police station and interrogated by two detectives. Before asking any questions, one of the detectives read Banks his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and asked Banks if he understood those rights. Banks nodded. The detective then asked Banks if he agreed to talk to them. Banks responded:

> [T]his is a pretty serious charge that you guys
> are comin' at me with, but like . . . I mean I
> don't wanna lose my chance to like be able to
> talk, but I also feel like I should have an
> (inaudible) [attorney] . . . so it's kinda like a
> catch-22. Like I know if I ask for an attorney,
> you guys will bring me right back out there,
> and I won't get this . . . any chance of like see
> why (inaudible) like talk to about this shit you

---

[3] Because we are reversing Banks's conviction based on the instructional error, we need not address his cumulative error argument. *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 (explaining that cumulative error may require reversal when no single error prejudices the defendant's substantial rights).

know what I mean.  Like I just feel like . . . it's
a fucked-up situation like.

¶ 36    The detective replied that it was "ultimately [Banks's] choice" and that Banks "need[ed] to figure out what's best for [him]."  He explained that he could not "try to talk [Banks] into . . . making one choice or another" and that Banks was going to jail either way.

¶ 37    Banks agreed to talk.  After about fifteen minutes, the detectives told Banks they had a video of him shooting Islas.  When Banks asked to see it, one detective raised his voice and said:

> We'll go get it, 'k.  'Cause you're lying through
> your fucking teeth right now, 'k.  'Cause you
> damn near slipped right there when you said,
> we didn't, we wasn't arguing.  That was about
> to come out of your mouth, 'k.  Be a man, own
> up to what you did, 'k and tell us what the hell
> happened.  It's very simple.  We know it was
> you . . . .

¶ 38    The other detective then told Banks they knew he had told a friend that he had killed someone at the Venture Inn.  One detective said, "We're not playing games here" and urged Banks to "[j]ust tell [them] the truth."  Banks began crying and said, "What, so I can go to prison for the rest of my life?"  The detective responded, "What [do you] think[']s gonna happen anyway?  But at least you can tell us and get it off your chest."  Banks then confessed to killing Islas.

19

¶ 39    Banks moved to suppress his statements during the police interrogation.  He argued that his *Miranda* waiver was not knowing and intelligent because his comment about not wanting to "lose [his] chance to . . . be able to . . . talk" but feeling like he should have an attorney reflected a misunderstanding of his right to have an attorney present while he spoke to police.  He also argued that the detectives' "power play" and "manipulation" made his *Miranda* waiver and subsequent statements involuntary.

¶ 40    The district court denied the motion to suppress after an evidentiary hearing.  It first concluded that the *Miranda* waiver was valid, finding that (1) Banks fully understood his *Miranda* rights, including his right to an attorney; (2) Banks's statements "reflect[ed] strong knowledge" of the consequences of his decision to speak; and (3) although the interrogation "did become aggressive at certain points," nothing the detectives did "was designed to overbear" Banks's will.  The court also found that Banks's "statements throughout [the interrogation] were made voluntarily."

¶ 41    Before trial, the prosecution moved to redact certain of Banks's statements as improper evidence of Islas's character.  Two of those proposed redactions are relevant to this appeal.

1. Redaction 2: "He (inaudible) like when he gets really high he kinda talks a little crazy and you can ask anybody over there like . . . ."

2. Redaction 9: "[W]hen his head gets so fucked up and he thinks that he's seeing people and demons and stuff like that, you don't know what he's gonna do . . . like you really don't and that's why he'll kidnap people and hold them hostage in his room . . . because he thinks that they're a demon. . . . So, it's like he had mental issues . . . and like I know about 'em like, like I said [Islas] used to be different . . . back in the day and like that's kinda why I've been hesitant to go over there and like he has been suicidal. He has been like fucked up in the head. Like, I feel bad for [Islas] . . . ."

¶ 42    Defense counsel objected to the redactions, arguing that the statements were relevant to Banks's claim of self-defense because they showed his state of mind at the time of the shooting and his knowledge of Islas's prior violent acts.

¶ 43    The district court granted the redactions. For redaction 2, the court concluded that Islas's "[c]haracter for talking crazy because of being high" did not involve a violent act and therefore was not relevant to self-defense. For redaction 9, the court found that the statement extended "far beyond [Banks's] fear for his own safety" and addressed Islas's unrelated mental health issues. The court

21

also ruled that, to the extent the statement addressed Islas's act of kidnapping people, it was cumulative of other evidence.

¶ 44     The day before trial, the prosecution notified the defense that it no longer intended to introduce the recording of Banks's interrogation at trial.  The defense introduced the redacted video.[4]

### B.     Motion to Suppress

¶ 45     Banks contends that his statements should have been suppressed on two grounds: (1) his *Miranda* waiver was not knowing, intelligent, and voluntary because he misunderstood his constitutional rights; and (2) his statements were not voluntary because the detectives' conduct was coercive.  We disagree.

### 1.     Standard of Review and Applicable Law

¶ 46     A ruling on a motion to suppress is a mixed question of fact and law.  *People v. Ashford*, 2020 CO 16, ¶ 9.  In reviewing such a ruling, we defer to the district court's factual findings if they are supported by the record and review the legal effect of those facts de

---

[4] The district court concluded that the prosecution's last-minute decision not to introduce the interrogation video effectively left Banks with no choice under the circumstances but to introduce it himself.  The People do not argue that Banks waived his challenge to the denial of his motion to suppress by introducing the video.

novo.  *People v. Taylor*, 2018 CO 35, ¶ 7.  Both the validity of a

*Miranda* waiver and the voluntariness of a defendant's statements

are legal questions that we review de novo.  *People v. Smiley*, 2023

CO 36, ¶ 12; *Effland v. People*, 240 P.3d 868, 878 (Colo. 2010).

¶ 47    A *Miranda* waiver is valid only if it is knowing, intelligent, and

voluntary.  *Smiley*, ¶ 15.  A waiver is knowing and intelligent if it is

"made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it."

*Id.* at ¶ 16 (citation omitted).  But the defendant need not

"understand every consequence" of the waiver.  *People v. Al-Yousif*,

49 P.3d 1165, 1169 (Colo. 2002).  It is enough that the defendant

"minimally understood that he did not have to talk to the police,

that he could request a lawyer, and that, if he spoke, what he said

could be used against him to obtain a conviction."  *Id.* at 1172.

¶ 48    A waiver is voluntary if it is "the product of a free and

deliberate choice rather than intimidation, coercion, or deception."

*Smiley*, ¶ 16 (citation omitted).  A waiver is involuntary only if

"'coercive police activity' . . . 'played a significant role in inducing'"

the waiver.  *Id.* at ¶¶ 20-21 (citations omitted).  This inquiry turns

on the totality of the circumstances, including but not limited to the

defendant's "age, education, background, and intelligence; his experience with the criminal justice system; how his *Miranda* rights were explained and when they were given; whether the detectives engaged in any potentially coercive conduct; and the timing of the alleged misconduct." *Id.* at ¶ 34. If a *Miranda* waiver is invalid, the defendant's statements must be suppressed. *Id.* at ¶¶ 44-45.

¶ 49    Moreover, even if a *Miranda* waiver is valid, the defendant's statements must be suppressed if those *statements* are involuntary. *People v. Zadran*, 2013 CO 69M, ¶ 9; *see also Smiley*, ¶ 18 (noting that voluntariness of statements and voluntariness of waiver are "analytically distinct" (citation omitted)). A statement is involuntary if the police conduct overbore the defendant's will and elicited a statement that was "not freely self-determined." *People v. Ramadon*, 2013 CO 68, ¶ 20. Like an involuntary waiver, that determination requires two findings: (1) "the police conduct must have been coercive," and (2) "the coercive police conduct must have played a significant role in inducing the statements." *Id.* In conducting this inquiry, we consider the totality of the circumstances, including

(1)    whether the defendant was in custody;

(2)    whether the defendant was free to leave;

(3)    whether the defendant was aware of the situation;

(4)    whether the police read *Miranda* rights to the defendant;

(5)    whether the defendant understood and waived *Miranda* rights;

(6)    whether the defendant had an opportunity to confer with counsel or anyone else prior to or during the interrogation;

(7)    whether the statement was made during the interrogation or volunteered later;

(8)    whether the police threatened the defendant or promised anything directly or impliedly;

(9)    the method or style of the interrogation;

(10)  the defendant's mental and physical condition just prior to the interrogation;

(11)  the length of the interrogation;

(12)  the location of the interrogation; and

(13)  the physical conditions of the location where the interrogation occurred.

*Cardman v. People*, 2019 CO 73, ¶ 23.

## 2. *Miranda* Waiver

¶ 50 Banks's challenge to the validity of his *Miranda* waiver is based on his statement to detectives that he was in a "catch-22" — that if he asked for an attorney, he would "lose [his] chance" to talk to them. Banks asserts that this statement evinced a misunderstanding of his right to talk to the detectives *with an attorney present*. And he argues that the detectives engaged in coercive conduct by failing to correct that misunderstanding.

¶ 51 We disagree that Banks's remark reflected a misunderstanding of his rights. To the contrary, his statements as a whole indicated that he understood his fundamental rights — his right not to speak, his right to request a lawyer, and the fact that his statements could be used against him. *See Al-Yousif*, 49 P.3d at 1169. He also understood that, if he requested a lawyer, the detectives would have to stop talking to him. *See Leyba v. People*, 2021 CO 54, ¶ 14. And to the extent he implied that he would not be able to talk to the detectives later, that could reasonably be understood as a recognition of the practical reality that a lawyer would likely advise Banks not to speak. But it did not belie the "rudimentary understanding" of his "basic choices" that *Miranda* requires. *Al-*

*Yousif*, 49 P.3d at 1170, 1172; *see also People v. Thames*, 2015 CO 18, ¶ 12 ("[A] defendant need not understand every consequence of his decision to waive for his waiver to be knowing and intelligent.").

¶ 52 For the same reasons, we reject Banks's argument that the detectives engaged in coercive conduct by failing to clarify the nature of the *Miranda* rights in response to Banks's remark. Although detectives should attempt to clarify any "substantial misconceptions" of the *Miranda* rights revealed by a suspect's statements, *People v. Redgebol*, 184 P.3d 86, 98 (Colo. 2008), *overruled on other grounds by Leyba*, 2021 CO 54, Banks's statements did not reflect any such substantial misconceptions. *Cf. People v. Newton*, 2022 COA 59, ¶¶ 21-22 (holding that *Miranda* waiver was invalid where officers told the defendant that "'the only way' he could have an attorney present for questioning would be if he was able 'to pay for one'" and then "dodged" the defendant's attempt to clarify whether he would need to pay for an attorney).

¶ 53 Thus, because the record confirms that Banks had a basic understanding of his rights and the consequences of his waiver, and because there is no indication of coercion, we conclude that Banks's *Miranda* waiver was knowing, intelligent, and voluntary.

27

### 3. Voluntariness of Statements

¶ 54    We also conclude that Banks's statements made after his *Miranda* waiver were voluntary.

¶ 55    Of the thirteen nonexhaustive factors that we consider, several support a conclusion of voluntariness. *See Cardman*, ¶ 23 (listing factors). The detectives advised Banks of his *Miranda* rights (factor four), and Banks understood and waived those rights (factor five). The detectives made clear to Banks that he was under arrest for a homicide (factor three), that he would be going to jail regardless of whether he agreed to speak, and that they would not make any promises (factor eight). And although Banks cried at several points during the interrogation, he was alert and uninjured (factor ten).

¶ 56    Banks contends that his statements were involuntary because (1) the detectives failed to correct his misunderstanding of his *Miranda* rights, and (2) the detectives used aggressive interrogation tactics, including raising their voices and accusing him of lying.

¶ 57    We have already rejected the first argument. Because Banks's statements did not reveal a misconception of his basic *Miranda* rights, the detectives did not engage in coercive conduct by failing to correct that purported misconception. *See Ramadon*, ¶ 20.

¶ 58    Nor did the detectives engage in coercive conduct by raising their voices and accusing Banks of "lying through [his] fucking teeth" and "playing games." An officer's "angry and confrontational demeanor" does not necessarily render a defendant's statements involuntary. *People v. Valdez*, 969 P.2d 208, 212 (Colo. 1998). And we see nothing in the detectives' conduct that "overb[ore] [Banks's] will to resist." *Ramadon*, ¶ 20. The detectives had reason to believe Banks was lying — he had told them he was not at the Venture Inn on the day of the shooting, despite surveillance video showing him there — and "it was not coercive for [them] to encourage [Banks] to tell the truth." *People v. Miranda-Olivas*, 41 P.3d 658, 662 (Colo. 2001). And although they displayed some anger or frustration in doing so, the detectives did not threaten Banks or appear to "exploit any unique vulnerability." *People v. McIntyre*, 2014 CO 39, ¶ 22.

¶ 59    Banks asserts that his crying at several points during the interrogation demonstrates the detectives' psychological coercion. But "the record does not establish that [Banks] was overwhelmed to the point that he relinquished his will and spoke involuntarily." *McIntyre*, ¶ 19; *see also People v. Mares*, 263 P.3d 699, 708 (Colo. App. 2011) (holding that witness's statements were voluntary "even

though she broke down crying at one point during the interrogation"). Although he cried a few times, he was otherwise composed during most of the interrogation, and with the couple exceptions Banks identifies, the general tenor of the interrogation was conversational. *See Zadran*, ¶ 19 (holding that statements were voluntary where defendant was "calm and composed" and "the interrogation was conversational"). Even when Banks cried, he remained generally composed and his answers were coherent. *Cf. People v. Humphrey*, 132 P.3d 352, 354, 362-63 (Colo. 2006) (affirming the district court's finding that the defendant's statements were involuntary where she "collaps[ed] into tears and hysterics" and gave "partially coherent" answers).

¶ 60    Thus, considering the totality of the circumstances, we conclude that the detectives' conduct was not coercive, much less so coercive as to "overbear [Banks's] will." *Ramadon*, ¶ 20. To the contrary, the video of the interrogation supports the conclusion that Banks's statements were "the product of [his] essentially free and unconstrained choice." *Id.* at ¶ 19. We therefore conclude that the district court correctly denied the motion to suppress.

## C.    Redactions

¶ 61    Banks also contends that the district court erred by excluding his statements encompassed by redactions 2 and 9. Those statements indicated that Islas (1) "talks a little crazy" when he "gets really high"; (2) "sees people and demons" and "had mental issues"; (3) "has been suicidal"; and (4) has kidnapped people and held them hostage in his room. We perceive no abuse of discretion.

### 1.    Standard of Review and Applicable Law

¶ 62    A district court has broad discretion in determining the admissibility of evidence based on its relevance, its probative value, and its prejudicial impact. *People v. Elmarr*, 2015 CO 53, ¶ 20. We review evidentiary rulings for an abuse of discretion. *Id.* A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

¶ 63    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Irrelevant evidence is inadmissible. CRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. CRE 403.

### 2. Analysis

¶ 64      Banks contends that the redacted statements were relevant to self-defense because they supported his reasonable belief that Islas would use unlawful force. With one caveat, we disagree.

¶ 65      Evidence of the victim's prior violent acts, if known to the defendant, may be admissible "as direct evidence of an essential element of self-defense, namely, the reasonableness of the defendant's belief in the imminent use of unlawful physical force against him." *People v. Jones*, 675 P.2d 9, 17 (Colo. 1984).

¶ 66      To the extent the redacted statements went beyond Islas's prior violent acts to claims about his drug usage and mental health struggles, we agree with the district court that they were irrelevant. The "required inferential leap" — that because Islas used drugs, hallucinated, and struggled with mental health, Banks "legitimately feared [Islas] was more prone to violence — is a leap too far." *People v. Toro-Ospina*, 2023 COA 45, ¶ 53. Not only were Islas's mental health struggles irrelevant, but they risked "taint[ing]" Islas in ways that were unrelated to his history of, or character for, violence. *Id.*

32

¶ 67     The only prior violent act Banks mentioned in the redacted

statements was that Islas would "kidnap people and hold them

hostage in his room," ostensibly as a result of the mental health

issues Banks described.  But to the extent this nonspecific

assertion of prior kidnapping was relevant to Banks's reasonable

belief that Islas was about to use unlawful force when he pointed a

gun at Banks and told him to leave — demonstrably *not* a

kidnapping — the district court correctly found that it was

cumulative of other evidence in the case.  *See People v. Warner*, 251

P.3d 556, 564 (Colo. App. 2010) ("Admission of cumulative evidence

is a matter within the sound discretion of the [district] court.").

¶ 68     The district court denied the prosecution's request to redact

another statement by Banks that Islas had "been kidnapping people

in their rooms . . . because . . . when he gets real high he's not all

there."  That statement was played for the jury.  The court also

admitted other statements concerning Islas's prior violent acts,

including that "when he gets high . . . he pulls guns on people" and

that he had pulled a gun on Banks multiple times before —

including earlier that night.  Given these other statements, the

court did not abuse its discretion by excluding another statement

33

about Islas kidnapping people that was intertwined with otherwise inadmissible discussion of his mental health. *See People v. Saiz*, 32 P.3d 441, 448 (Colo. 2001) ("A trial court also cannot be considered to have abused its discretion in excluding logically relevant evidence as needlessly cumulative unless its decision, under the circumstances, was manifestly arbitrary, unreasonable, or unfair.").

## IV. Banks's Other Arguments

¶ 69 Banks makes two additional arguments on appeal — that the prosecutor committed reversible misconduct and the district court erred by imposing the costs of prosecution. Because these issues are not likely to "arise in precisely the same posture" in a new trial, we do not address them. *People v. Gulyas*, 2022 COA 34, ¶ 29.

¶ 70 The challenged prosecutor's statements were closely tied to the erroneous defense of premises instruction. Any such statements in a retrial should conform to the new instruction and this opinion. And the imposition of prosecution costs will become an issue only if Banks is convicted after retrial. *See* § 16-18-101(1), C.R.S. 2025.

## V. Disposition

¶ 71 The judgment of conviction is reversed, and the case is remanded to the district court for a new trial.

JUDGE GROVE and JUDGE YUN concur.